## H. P. LINDERMAN et al. v. CHARLES M. CARMIN, Administrator, Appellant.

### Division Two, February 17, 1914.

1. **PRACTICE: Matter for Jury or Court: Different Reasonable Inferences.** Where upon the undisputed facts in the case, though all the evidence be produced by plaintiff, reasonable men can draw more than one fair inference from them, it is for the jury to resolve the facts, and not for the court as matters of law.

2. ———: ———: **Conclusion of Witness: Money Advanced.** Where the witness, both on direct and cross-examination, was permitted to testify that plaintiffs (her parents) had "advanced" the money to defendant to go to California to identify the body of his wife (their daughter) who had been killed in a railroad accident, and defendant did not ask for the exact words used, defendant must be held to have waived his right to require a detailed statement of the conversation, and the jury were justified in drawing from the testimony the strongest reasonable inference in plaintiffs' favor which it would bear, and therefore in finding that the money was a loan and not a gift.

3. ———: ———: ———: ———: **Meaning of Advanced.** The term "advanced" when used in a contract, or as describing the transfer of money from one person to another, usually means "furnished with the expectation that it will be returned." So that where the testimony is in words that plaintiffs "advanced" money to defendant, and defendant accepts that mere conclusion of law, without asking the witness to detail the words actually used, the jury are authorized in finding that the money was not a gift, but was a loan, to be returned.

4. ———: ———: ———: ———: ———: **Weighing the Testimony.** And though there was some testimony to the effect that plaintiffs, having furnished money to defendant, after-

wards by letters and conduct indicated that they did not ex-
pect him to return it, the court cannot say that the jury were
not justified in finding as a fact that a debt was created, and
the money was not a gift, if one witness unequivocally says
it was an advancement, since for the court to say that the
letters and conduct rebutted and overthrew the testimony of
said witness would be for the court to weigh the evidence,
and find a fact—a thing it cannot do.

5. ————: ————: Declarations Against Interest: Presumption.
Declarations of plaintiffs against their interest are presumed
to be true, because against interest; but the presumption is not
a conclusive one and the court cannot tell the jury how much
weight they must give to either conduct or declarations that
may be in conflict with plaintiffs' position at the trial, nor
undertake to balance them off against positive testimony that,
standing alone, would justify a verdict in their favor.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

AFFIRMED.

*Patterson & Patterson* for appellant.

(1) The court erred in submitting the first item
of respondent's case, to-wit, the $320 less ten dollars,
to the jury, for the reason that there was no evidence
that said sum was furnished to L. L. Carmin, as a
loan, but all the evidence was to the effect that the said
Carmin was respondent's agent, and that the said
money was used in consummating the purposes of the
agency. (2) It is within the province of an appellate
court to set aside the judgment when the record shows
no substantial evidence to support the verdict on which
it is based, since the question whether the evidence
adduced in a given case possesses probative value is
one of law and not of fact. Bond v. Railroad, 122 Mo.
App. 213. When plaintiff's own evidence demonstrates
that the alleged fact on which he predicates his right
to recover cannot exist, it cannot be said that the tes-
timony of one of the witnesses that such fact does
exist is any substantial evidence thereof. DeMaet v.

Moving Co., 121 Mo. App. 104; Phippin v. Railroad, 196 Mo. 343; Champagne v. Hamey, 189 Mo. 726; Stafford v. Adams, 113 Mo. App. 717; Sanguenet v. Railroad, 196 Mo. 494; Klockenbrink v. Railroad, 172 Mo. 678; 6 Ency. Pl. & Pr. 678; Uhrich v. Osborn, 106 Mo. App. 492; Taussig v. Wind, 98 Mo. App. 129; Mexico v. Jones, 27 Mo. App. 534; Morrow v. Car Co., 98 Mo. App. 351.

*A. F. Drake* and *Hamlin & Seawell* for respondents.

(1) There was an implied promise on the part of Carmin to repay the money advanced him by respondents. Moore v. Renick, 95 Mo. App. 202; Stobie v. Earp, 110 Mo. App. 73. (2) To "advance" money is to pay it before it is due, or it is to furnish money for a specified purpose, understood between the parties, the money or some equivalent to be returned. R. S. 1909, sec. 1001; 1 Words and Phrases, p. 214; Thorne v. French, 24 N. Y. Supp. 694. It was the legal duty of Carmin to pay all the expenses of burying his wife. 8 Am. & Eng. Ency. Law, 838; Matter of Weringer, 100 Cal. 345; Patterson v. Patterson, 59 N. Y. 574, 17 Am. Rep. 384; Jenkins v. Tucker, 1 H. Bl. 90; Ambrose v. Harrison, 10 C. B. 776; Seybold v. Morgan, 43 Ill. App. 39; Santer v. Scrutchfield, 28 Mo. App. 156; Cunningham v. Reardon, 98 Mass. 538. (3) The court will not reverse a cause unless error has been committed "materially affecting the merits of the action." R. S. 1889, sec. 865. The court should have instructed the jury that it was the duty of Carmin to have paid the expense of burying his wife and that if it found from the evidence that Carmin received the money from respondents for the purpose of defraying said expense, then it should find the issues for the respondents. But the trial court went further and instructed the jury that it must find that there was an understanding and intention between Carmin and the respondents at the

time respondents furnished the money that it would be repaid to them. In fact, the court made that fact prominent, as it gave two instructions on that one point. Of course the evidence shows that there was an understanding at the time, but we contend that under the law respondents would not have to show that fact. But be that as it may, the appellant is in no position to complain, and if the trial court committed error in giving said instruction it was in favor of the appellant. This court should not disturb the verdict, as it is under the law and the evidence for the right party. Haniford v. Kansas City, 103 Mo. 172; Hanna & Co. v. Insurance Co., 109 Mo. App. 157.

FARIS, J.—This case comes to us from the Springfield Court of Appeals upon the dissent of a judge of that court and the suggestion that the opinion of the majority of the court therein is contrary to the decisions of this court in the cases of State ex rel. v. Elliott, 157 Mo. l. c. 618, and Knorpp v. Wagner, 195 Mo. l. c. 662. The facts will be found stated in the opinion of the Court of Appeals written by Judge Cox, which we shall, with a slight modification, adopt as expressing our views.

Practice: No Conflict in Evidence: Matter for Court or Jury?

The point upon which the case split in the Springfield Court of Appeals is, we think, upon the concrete facts before us, almost wholly academic. This point is thus stated by Judge GRAY, upon whose dissent we acquire jurisdiction:

"Where there is no conflict in the evidence and it all comes from plaintiff's witnesses and the written admissions made by the plaintiff, then it is the duty of the appellate court to pass upon the testimony as a matter of law."

On the other hand the majority opinion in this case as written by Judge Cox and concurred in by Judge NIXON, states the rule thus:

"The jury must weigh the testimony even though it all comes from one side and be uncontradicted."

It was said by this court in the case of State ex rel. v. Elliott, supra: "There is no conflict in the testimony, and therefore the legal effect of the uncontradicted evidence is open to inquiry in this court."

In the case of Knorpp v. Wagner, supra, it was said: "If, however, the substantive facts are undisputed, or if reasonable men can draw only one inference from the facts proved, the matter may resolve itself into a question of law."

In the case of Finnegan v. Railroad, 244 Mo. l. c. 653, the below rule from 2 Thompson on Negligence, 1179, was quoted with approval: "Where the facts are undisputed, or where but one reasonable inference can be drawn from them, the question is one of law for the court; but where the facts are left by the evidence in dispute, or where fair minds might draw different conclusions from them, it must go to the jury to resolve the dispute in the one case, or to draw the inference in the other."

We think that one paragraph of the majority opinion of the Court of Appeals is not in accord with the views expressed on the point in the cases above cited. We have therefore stricken this paragraph from the opinion, because it expresses a view of the law on the point up for ruling, which, if it is not contrary to our holdings is at least misleading, and because the paragraph eliminated is not, in our opinion, necessary to a decision of the case for the reason given in the next sentence below.

We are clearly of the opinion that this is a case which turns upon the facts, and that on the undisputed facts in the case, reasonable men can with the utmost fairness, draw more than the one inference which favors the insistence of the defendant; and so the facts in the case are for the jury to resolve as the triers of fact, and not for us to determine as matters of law.

That this is true might well be urged from the concrete fact now confronting us and which causes this case to come before us, *that reasonable men are drawing wholly different inferences from the undisputed facts.* It is upon this ground, as the majority opinion as we amend it and adopt it, well expresses the facts and well rules upon the law, that we are disposed to defer to the finding of the jury; regardless of the fact that we might have drawn a different conclusion and might have entertained different presumptions of fact if we were sitting where the triers of fact sat.

With this explanation and emendation of the opinion of the Springfield Court of Appeals we adopt it, both as a statement of facts and as an expression of the law of the case. The opinion follows:

."This lawsuit originated in the probate court of Greene county, in 1908. The plaintiffs are the parents of Vernie Carmin, who was the wife of L. L. Carmin, deceased. The defendant is the administrator of the estate of said L. L. Carmin. The demand presented in the probate court was originally for the sum of $939, made up of five items, to-wit: '$220 for money loaned L. L. Carmin to defray traveling expenses to California; $100 to defray funeral expenses of his wife; $129 to defray undertaker's expenses for the burial of the wife of L. L. Carmin; $200 for money had and received, and $300 for money had and received.'

"In the probate court the plaintiffs prevailed and were allowed the claim in full. The defendant appealed to the circuit court, and on trial before a jury, on June 28, 1909, the plaintiffs again obtained a judgment for $439, but subsequently entered a remittitur for $129, leaving the judgment stand for $310. The cause is now here on appeal by the defendant.

"On the trial in the circuit court, an instruction was given to the jury that plaintiffs were not entitled to recover on the items of $200 and $300 for money

had and received, and as the *remittitur* was entered for the $129 sued for as additional funeral expenses, the only items before us for review are the $220 item for money advanced for traveling expenses to California, and $100 loaned to defray funeral expenses.

"The facts of the case are as follows:

"The deceased, L. L. Carmin, married the daughter of the plaintiffs in 1899, and they afterward moved to Kansas City, and the old folks gave them a restaurant business. They continued in the restaurant business for about a year, when the father of the wife purchased the restaurant and gave her $500 in cash therefor. After this, the parties had no permanent home, but lived a part of the time with the plaintiffs at Sheffield. The daughter, Vernie, left her husband in 1906, and was last heard from at Sulphur Springs in September, 1906, from which place she wrote a card to her folks, stating she would write again in a few days. The next heard of her was in November, 1907, when her parents saw in a newspaper that she had been killed in California. Upon the receipt of this information, her father wired her husband to come to Kansas City. He immediately went to Kansas City and there was a conversation between him and his father-in-law in regard to going to California after the remains. As a result of this conversation $220 was furnished to Carmin by Linderman, and he went to California.

"The next heard of him was a telegram asking for an additional $100. The amount was wired to him. When he returned, he brought for burial the body of his wife, and returned to his father-in-law ten dollars, being the amount he had left unexpended. The father made arrangements for the burial and paid, a few days after the burial, the expenses thereof, amounting to $129.

"In order to determine the merits of this controversy, it is necessary for a further understanding of some other financial transactions between the parties.

When the wife left the husband in 1906, he made some bitter complaint to her parents to the effect that she had taken his money and property (although it is practically conceded he had none), and he was threatening to put her picture in the newspapers and advertise for her. In order to save this threatened humiliation, a written contract was entered into between the parents and the husband by the terms of which they agreed to give, and did give, him a note for $1000, due in a year, conditioned that the same should be null and void in case the husband and wife became reconciled within the period, and also the note was accepted by the husband as a full and complete settlement of all property disputes between him and his wife and her parents, and it was further agreed that all property and effects belonging to the wife should be turned over to the parents as security for the note and the husband relinquishing to his wife all of his right, title, interest and claim in and to the property.

"The husband, after securing this note and contract, did not turn over to the parents any of the property in his possession, belonging to his wife. After his return from California, he represented to the old folks that if they would take up the old contract and give him the one thousand dollars, he would see to his wife's property in California, take care of it for them, and also ship her things to them as soon as he got to Springfield. Whereupon they executed to him three notes, one for $300, two for $250 each, and gave him $200 in cash, to take up the $1000 note. They afterwards paid the $300 note and the two items of the account presented in the probate court were to recover the $200 cash, and the $300 paid in taking up the $300 note. After getting this money and notes, the son-in-law again absolutely failed to carry out his part of the contract. These items, however, were taken out by the court below, and are not now before us.

Linderman v. Carmin.

"The defendant offered in evidence a letter written by his mother-in-law, Mrs. Linderman, on January 11, 1908, from which we gather that the husband, in violation of the contract upon which he obtained the $200 in cash and the three notes, made a claim to the property of his wife, and in this letter the mother-in-law says:

Sheffield, Mo., Jan. 11, 1908.

Mr. L. L. Carmin,
    Dear Sir:
    Lu, we were surprised when we got the letter from Mr. Barnett. We trusted you to go out there and paid every cent for you, never thinking that you would swear to the statement you did. Now this compels us to make oath as to where Vernie got the money. Her pa payed her five hundred dollars for the restaurant, and the other she made by hard work in the restaurant. Her pa was with her when she went to the New England Bank here in K. C., the morning of the 27th of Sept. 1905, and had the money changed for the thousand dollar bill, which you made oath on the witness stand that she stole from you, and that it came from your mother's estate. Lu, how could you have sworn to such a falsehood. Vernie told me, and you did too, that she gave you the money to keep for her while in Hot Springs, she was going out somewhere, and you never would give it back to her, and, of course, as it never was yours, only in your trust, you should have given it back to her without her having to take it. Now as we are paying you the thousand dollars and you are out nothing, not even a meal while you was out in California, you never told the people out there that we was paying all of your expenses for you. We are so sorry that we ever had you go there, but we trusted you and thought you would do what was right, but found we was deceived by you. I don't know what kind of a turn this will make in California, but we are duty bound as parents to Vernie to protect her now in regards to how she came by the money. The poor child's life has been a failure. But I pray to the God above who knows all things that the poor little thing's spirit is now at rest, and now, Lu, I will close, hoping to hear from you at an early date, and you will send me all of her things as you promised.
                    Very respectfully,
                        MRS. H. P. LINDERMAN.

"The only error assigned is the refusal of the court to. sustain a demurrer to the testimony.

"Appellate courts do not weigh evidence and should never set aside the verdict of a jury where it is supported by substantial testimony, or where the facts bearing on the issues are disputed or undisputed, but admit of different conclusions or inferences upon which reasonable minds might differ. [Williamson v. Transit Co., 202 Mo. 345; Vincent v. Means, 207 Mo. l. c. 713.]

"A court may determine what is substantial testimony (Stafford v. Adams, 113 Mo. App. 717); but when that is done the court has exhausted its power and the duty of weighing the evidence belongs exclusively to the jury.

"In support of this verdict the respondent has the right to every reasonable inference which may be drawn from the evidence. [Wilson v. Board of Education, 63 Mo. l. c. 140; Heether v. Huntsville, 121 Mo. App. 495.] The appellate court usurps its power when it attempts to substitute its own judgment for that of the jury as the law that gives the court the right to declare the law gives the jury the right to find the facts. [Levels v. Railroad, 196 Mo. l. c. 617.]

"The only items to be considered on this appeal are $220 furnished Carmin before he started to California, and $100 wired to him after he reached there. Was there substantial evidence in this case to support the verdict for these two items? The testimony on which plaintiffs rely is as follows:

"Stell Linderman, a daughter of plaintiffs, testified in relation to what transpired between her father and Carmin at the time the $220 was furnished, and this was all the direct testimony in relation to that matter. Her testimony on that question is as follows: 'Q. Did you hear any conversation between Mr. Carmin and your father in regard to going to California? A. Yes, sir. Q. Tell the jury what he said. A. He said he wanted to go to California, but wasn't able to go. Said he didn't have the

means to go on, and my father advanced him the
money. Q. How much money? A. $220.' Then
follows testimony to the effect that her father, after-
wards, on receiving a telegram from Carmin, wired
$100 to him. On cross-examination we find this testi-
mony. 'Q. Did your father wire for him to come to
Kansas City? A. Yes, sir. Q. Tell him that Vernie,
your sister, had been killed? A. Told him it was in
the paper. Q. And asked him to go to California?
A. My father intended to go and Mr. Carmin said he
knew he could identify the body better and wanted to
go. Wanted to know if my papa and mamma would
not advance the money. Q. They advanced the money?
A. Yes, sir; they advanced the money for him to go
on.'

"We note that this witness does not give the lan-
guage of the parties, but only her conclusions from it.
This was permitted without objection and the attor-
ney for the defendant, in the cross-examination, led
her to repeat her testimony in practically the same
language. Now, if we take the language used by the
witness and give it the interpretation most favorable
to plaintiff, what does it mean? She testified that her
father advanced to Carmin $220. The term "ad-
vance," when used in a contract, usually means money
furnished with an expectation that it shall be re-
turned. [Hartje v. Collins, 46 Pa. St. 268; Balder-
ston v. National Rubber Co., 27 Atl. 507; Powder Co.
v. Burkhardt, 97 U. S. 110.]

"Webster's definition carries the same idea. Ab-
bott's Law Dictionary defines it as follows: 'To fur-
nish value before it becomes due, or in aid of an enter-
prise from which a return is expected.' If this lan-
guage had occurred in a written contract wherein one
party had agreed to advance money to another and
the court were called on to construe it, there can be no
question but that it would be held to mean that the
money was to be repaid, and it could not be construed

to mean a gift, unless it was expressly so stated. Such language might be used in connection with a gift. It does not necessarily mean that money advanced must, under all circumstances, be returned; yet, that is the sense in which it is most commonly used. Had an objection been made and the witness been required to give the language used by the parties, such language might have shown a clear understanding that the money was to be repaid, or it might have shown it to have been a gift; but having permitted the witness to testify to her own conclusion of the matter, the defendant must now be held to have waived his right to require a detailed statement of the conversation and the jury must be permitted to draw from the testimony, as given, the strongest reasonable inference in plaintiffs' favor which the testimony will bear.

"If this testimony, above quoted, had been all the evidence in the case, we have no hesitancy in saying that it would support this verdict.

"The defendant contends, however, that the subsequent conduct of plaintiffs, in signing notes and paying money to Carmin, and the letter written by Mrs. Linderman, are inconsistent with the claim that Carmin was, at that time, indebted to them, and raises the presumption that no such debt as now claimed by them existed and for that reason the demurrer to the testimony should have been sustained. This contention is not sound. To so hold would be for the court to say that these facts rebutted and overthrew the testimony of Stell Linderman, which tended to show that the money was furnished with the understanding that it should be returned and to do that would place the court in the position of weighing the testimony, which it cannot do. Declarations of a party against his interest are presumed to be true because against his interest, but this presumption is not a conclusive one, and the court cannot tell the jury how much weight they must give to either the acts or the declarations

of a party that may be in conflict with his position at the trial. . . .

"Such testimony could not do more than raise a presumption of fact; that is, the jury might presume from these facts that Carmin was not indebted to them, or said debt would have been settled at that time, but whether such presumption should follow or not was as much the province of the jury to determine as it was the province of the jury to weigh any other testimony in the case.

"In Ham v. Barret, 28 Mo. 388, this language is used: 'Where a presumption is one of fact merely, the court is not warranted in declaring it to the jury as a presumption authoritatively raised by law, but should direct them that from the evidence it is their province to determine whether they will raise the presumption or not. . . . Where the facts are before the jury, the presumptions or inferences they warrant are questions purely for them.'

"'This case has been followed and approved in Sowders v. Railroads, 127 Mo. App. l. c. 124; Morton v. Heidorn, 135 Mo. l. c. 617; Bluedorn v. Railroad, 121 Mo. l. c. 270, and has never been criticised or overruled for the very substantial reason that the principle therein announced is absolutely sound and must remain the law as long as the right of trial by jury is to be preserved. And while this is a claim against an estate we know of no reason why it should not be determined by the same principles applicable to other cases.

"If we are right in holding that the testimony of Stell Linderman, daughter of plaintiffs, as to what took place at the time the money was furnished to Carmin, would warrant the jury in finding that the parties understood at the time that it was to be repaid, then the court would not be warranted in telling them that the presumption of fact which they might, or might not raise, in their discretion, from the subsequent acts of

Linderman v. Carmin.

the plaintiffs, as above detailed, had so completely re-butted and overthrown the direct testimony of this witness that the jury must disregard it; yet this is, in effect, what the court would have done had it given the peremptory instruction as asked by defendant.

"Much stress is laid upon the fact that when Carmin returned from California he gave back to Mrs. Linderman ten dollars of the money which he had furnished. We do not think this fact is entitled to any great weight, for the reason that the payment of ten dollars at that time was in no way inconsistent with the finding of the jury that at the time the money was furnished, the parties understood that it should be re-paid, for if Mr. Linderman had furnished to Carmin the money to pay his expenses to California, either as a gift or as a loan, the return of such portion of the money as was not needed for the trip would be to our mind as consistent with one theory as with the other. The weight to be given to this circumstance, as with the other testimony, was purely a question for the jury and not for the court.

"Our conclusion is that there was sufficient testimony to take the case to the jury, and as this is the only error complained of, the judgment will be af-firmed."

It follows that the opinion of the circuit court of Greene county should be affirmed, and it is so or-dered. *Walker, P. J.,* and *Brown, J.,* concur.