Argued at Pendleton October 30; affirmed November 28, 1944;
rehearing denied January 30, 1945

## ROESCH et al. *v.* EQUITABLE SAVINGS & LOAN ASSOCIATION

(153 P. (2d) 525)

Before BAILEY, Chief Justice, and ROSSMAN, BRAND and HAY, Associate Justices.

*E. R. Ringo,* of Salem (H. E. Brady, of La Grande, on the brief), for appellants.

*S. H. Burleigh,* of La Grande, and *Ralph H. Cake,* of Portland (Cake, Jaureguy & Tooze, of Portland, and Dixon & Burleigh, of La Grande, on the brief), for respondent.

BAILEY, C. J. The plaintiffs, Julius Roesch and Annie Roesch, his wife, together with their son, their two daughters and the daughters' husbands, on or about October 2, 1934, made, executed and delivered to the defendant, Equitable Savings & Loan Association, their promissory note for $128,930.63, payable in monthly installments. This note was secured by a mortgage on real property at La Grande, Oregon, on which were located the Sacajawea hotel and an adjoining seven-story building containing offices and apartments, and further secured by a chattel mortgage on all the furniture and equipment belonging to the mortgagors located in those buildings. Both mortgages were executed by all the signers of the note.

On June 5, 1943, all the principal of the note, with interest, had been paid except $5,203.69, and on that date the plaintiffs tendered that amount to the defendant and requested that the defendant satisfy the mortgages of record. The defendant, however, refused to accept the sum tendered as full satisfaction of the indebtedness owing it by the mortgagors, claiming that

in addition to the amount tendered the mortgagors were further indebted to it for $2,853.61 which the defendant had paid on or about July 1, 1935, as delinquent taxes on the land on which the La Grande hotel at La Grande, Oregon, was located, with interest thereon at ten per cent per annum from the date that the amount was paid by it.

Again, on October 5, 1943, the plaintiffs tendered to the defendant the balance of principal specified in the note, together with accrued interest, and demanded release of the mortgages. The defendant refused to accept this tender, on the same ground as above stated. Thereupon this suit was instituted by the plaintiffs, owners of the real and personal property covered by the mortgages, for a decree declaring the sum tendered to be the full amount due on the promissory note and ordering the defendant to satisfy the above-mentioned mortgages.

The defendant in its amended answer denies that the sum tendered is the full amount due it, and as an affirmative defense alleges that prior to the execution of the note and mortgages it was understood and agreed by and between the plaintiffs and the defendant that the defendant should purchase for and on account of the plaintiffs the real property at La Grande, Oregon, upon which was located the La Grande hotel; that the purchase price of that property should be paid by the defendant and be included in the note and mortgages hereinbefore mentioned; that in the event that the defendant should thereafter "pay any insurance premiums, taxes, street assessments or other liens" on that property, "such payments should be considered as for the benefit of plaintiffs and should be considered as advances against said mortgage and added to the

amount of said mortgage indebtedness and secured by said mortgage''; and that in pursuance of that agreement the La Grande hotel property ''was purchased by the defendant and title thereto taken in the name of an agent of the defendant, all for plaintiffs and for their use and benefit, and the purchase price thereof was paid by defendant from said mortgage funds and included in the total of said mortgage indebtedness.''

The answer further alleges that in accordance with the agreement between the parties, the defendant, on or about July 1, 1935, paid $2,853.61 as an installment of delinquent taxes ''assessed against and constituting a lien upon'' the La Grande hotel property; but that through mutual mistake of the mortgagors and the defendant, and without negligence on the part of the defendant, there was not included in the (real property) mortgage ''a provision carrying out the intention of the parties as aforesaid that in the event the mortgagee should pay taxes upon said above described La Grande hotel property, the same should be repayable by mortgagors on demand and secured by said mortgage, and should draw interest at the rate of 10 per cent per annum until repaid.'' The defendant then avers that in order to carry out the intention of the parties the (real property) mortgage should be reformed by adding thereto a provision substantially in accord with the alleged agreement in regard to the repayment of taxes, and prays for such reformation.

Following a trial the court entered a decree in favor of the defendant in accordance with its prayer, from which decree the plaintiffs have appealed.

Only one assignment of error is set forth in the plaintiffs' brief on appeal, to wit: that the court erred in making and entering findings and a decree in favor

of the defendant. Inasmuch as the findings are questioned, it will be necessary to review at some length the evidence introduced in the trial of the case.

On or about October 25, 1931, the signers of the note and mortgages above described executed and delivered to the defendant a mortgage on real properties commonly known as the Sacajawea hotel and the Sacajawea apartments in La Grande, to secure payment of their note in the sum of $115,000. During the three years following, up to the summer of 1934, they paid less than $10,000 on the principal of that note. In those years taxes against the property became delinquent.

The Sacajawea hotel was in competition with the La Grande hotel for patronage, which was insufficient to support both. Prior to August 11, 1934, a mortgage on the latter hotel, held by Spokane Savings Bank, had been foreclosed and the property purchased by the mortgagee, which was then in the hands of a receiver.

During the summer of 1934 negotiations were carried on between the mortgagors of the Sacajawea hotel and representatives of the defendant corporation, looking to the purchase of the La Grande hotel property from the receiver of the Spokane Savings Bank, in order to discontinue its use for hotel purposes. Delinquent taxes against the La Grande hotel then exceeded $20,000, and the lowest bid which the receiver would consider for the sale of the property subject to the liens against it was $23,400. As a result of those negotiations it was agreed between the signers of the October, 1931, mortgage and the defendant that the defendant should purchase the La Grande hotel from the receiver for $23,400 and add that amount to the exist-

ing mortgage indebtedness. The understanding was also that the defendant should take title to the La Grande hotel, either in its own name or in that of some corporation or person designated by it.

Julius Roesch, acting on behalf of the mortgagors, on August 11, 1934, wrote a letter to the defendant corporation in which he stated:

"We will give you a first mortgage including the $23,400.00 on the La Grande hotel, also additional security.

"If this meets with your approval, I will be glad to meet you in your office and talk it over."

Ten days later, on August 21, 1934, Messrs. Cake & Cake, of Portland, attorneys for the defendant company, wrote to Mr. Roesch a letter in which, among other things, they said:

"In regard to the matter of your mortgage in favor of the Equitable Savings and Loan Association upon the hotel and apartment property in La Grande, Oregon, known as the Sacajawea hotel and the Sacajawea apartment, we wish to state that we are willing to rewrite this mortgage upon the following terms:

"1. The amount of the mortgage shall be the present balance, plus $23,400."

Then are set forth the term of the loan, the interest rate, the amount of monthly installments payable, the additional property (not here material) to be covered by the new mortgage, and, in conclusion:

"8. If it is necessary to advance any money for taxes upon the La Grande hotel, the company shall make such advance for the benefit of its mortgage.

"9. It is the understanding that the title to the La Grande hotel is to be taken in the name of

the Equitable Savings and Loan Association, or some corporation or person designated by it, and an effort be immediately made to sell or get rid of the same, but with the provision that the property can never be used for hotel purposes again.

"If this meets with your approval, kindly indicate at once and the new papers will be drawn."

The mortgagors were desirous of further explanation as to what was to be done with the La Grande hotel, and on September 8 of that year Messrs. Cake & Cake wrote another letter addressed to Julius Roesch, in part as follows:

"Referring to our letter to you of August 21, 1934, and supplemental thereto, we wish to advise you as follows:

"1. Paragraph 9 of such letter refers to the La Grande hotel and you desire more specific information as to our method of carrying out this provision. Our intention and what we agree to is: In the event we sell or convey this property there shall be a clause contained in said conveyance providing that such property may never be used as a hotel or apartment building in any wise competing with the Sacajawea hotel or apartment building, and should the grantee or any of his assigns so use, contrary to the clause contained therein, the property, the building is to revert to the grantor. Further, after you have paid the mortgage in full, and if the title to said La Grande hotel property still remains with us, we shall deed the same to you or your assigns.

\* \* \*

"5. The furniture from the La Grande hotel is to be removed from the hotel as soon as possible, not later than July 1, 1935, and removed from La Grande, Oregon."

On the same date as that of the letter last quoted, Julius Roesch signed a letter addressed to the defendant, reading as follows:

"Referring to the letter of August 21, 1934, and of September 8, 1934, written by Cake & Cake and referring to the mortgage which you now hold upon property known as the Sacajawea hotel and Sacajawea apartment building in La Grande, Oregon, we beg to state that the terms are set out therein for a new note and mortgage, and state that you may proceed under such terms to prepare the necessary papers that we may sign the same."

Following those negotiations the La Grande hotel property was purchased by the defendant for $23,400 and title thereto was taken in the name of an individual in Portland selected by the defendant. There was some delay in the closing of the loan, and the note and mortgages securing it were not delivered until about October 2, 1934. Included in the note was the $23,400 payment made by the defendant for the purchase of the La Grande hotel.

The real property mortgage was on a printed form prepared for and in use by the defendant corporation. It provided, among other things, that the mortgagors would pay when due all taxes, assessments and other charges against the mortgaged property, and further provided that should the mortgagors fail to keep any of the convenants therein contained, "then the mortgagee may at its option carry out the same and all its expenditures therefor shall draw interest until repaid at the rate of ten (10) per cent per annum, be repayable by the mortgagors on demand, and shall be secured by this mortgage."

At this point it is well to note that the defendant contends that the provision in the last preceding

paragraph quoted from the mortgage should be amended in order to carry out the agreement of the parties, by adding after the word "same" and before the word "and" a comma and the following: "and may also make payments upon taxes, city assessments and other liens upon the La Grande hotel property"; and that the circuit court did reform the mortgage by making the suggested addition.

The representative of the defendant corporation who conducted the negotiations with the mortgagors testified that prior to the writing of the letter of August 11, 1934, by defendant's counsel, it had been understood and agreed between the defendant and the mortgagors that the new mortgage on the real property was to contain a clause permitting the mortgagee, the defendant corporation, to pay the taxes on the La Grande hotel property "if it deemed that it was for the best interest of the mortgagors and mortgagee" and include the same in the mortgage. This witness also stated that the instrument was drawn up in the same manner as other mortgages of the defendant corporation; and that because the mortgage did not cover the real property on which the La Grande hotel was located, the scrivener by mistake and oversight omitted the provision intended to be inserted to cover taxes and other charges against the La Grande hotel property which might be paid by the mortgagee.

Plaintiff Julius Roesch, who represented all the mortgagors in the negotiations with the defendant, testified that at no time did he agree to repay any advances made by the defendant on the La Grande hotel property.

The sheriff and tax collector of Union county on June 19, 1935, notified the defendant that the third

installment of 1928 taxes on the La Grande hotel property on the ten-year plan would be due and payable July 1, 1935, and that it was necessary to pay it by that date in order to keep the property off the sale list. In response to the notice the defendant did on June 29, 1935, pay the third installment, totaling $2,853.61 and comprised of taxes, interest and penalty.

After the defendant had paid the installment of delinquent taxes, Julius Roesch on August 19, 1935, wrote to one of the attorneys for the defendant, calling his attention to the fact that Mr. Rhodes would see him about "renewing his option on the La Grande hotel", and stating that he did not "believe this will be a good move, because Mr. Rhodes knows now that he can never sell the building with the restrictions that you put in his option." The letter further stated that Mr. Rhodes had told the county judge that if the property should be sold for taxes, he would buy it. In conclusion Mr. Roesch added:

"My guess is, he figures that if he renews the option now, no one can touch the building, because he will see that it is not molested. If the next tenth payment is not paid, that it will be sold for the taxes. Since he is insisting on the county selling the hotel as soon as possible, so that he could buy it and resell it without restrictions on the building, it seems to me that something should be done between now and January first; [and] then let the county have the building."

During 1936 or 1937 the La Grande hotel property was sold for delinquent taxes and purchased by Union county. Thereafter, early in 1940, the county sold the property to a chain store organization. The plaintiffs on January 4, 1940, executed and delivered to that

purchaser a quitclaim deed to the property. Later in the same year the individual in whose name the defendant corporation had taken title to the property, and his grantee, likewise executed and delivered quitclaim deeds to the chain store company.

Elimination of the La Grande hotel as a competitor of the Sacajawea inn greatly increased the business and income of the latter, to the extent that by March 31, 1938, the inn was earning six per cent per annum on a valuation of $250,000, over and above taxes, insurance "and all other expenses." At that time the mortgagors had paid $15,000 in excess of the amount required of them as monthly installments of the principal of their debt. And by June 5, 1943, they had, as hereinbefore stated, reduced the indebtedness, exclusive of the taxes on the La Grande hotel here involved, to $5,203.69.

■■ In determining the question here presented, it must be borne in mind that a court of equity should never decree reformation of a written contract except upon clear, satisfactory and convincing evidence of the real agreement of the parties and of the fact that the instrument, through mistake, does not embody that understanding: *Eley v. Miller,* 166 Or. 80, 110 P. (2d) 587; *Brown v. Briggs,* 134 Or. 184, 292 P. 1034. It must clearly appear that the omission was contrary to the intention of the parties: *Shively v. Welch,* 2 Or. 288.

On this appeal the appellants seem to assume that the La Grande hotel property belonged to the defendant and that the Roesch family had no interest in it. This also was the position taken by Julius Roesch in the letter that he wrote to the defendant corporation on March 31, 1938, to which reference has been made. In that he stated that he did not see why he should "re-

imburse you for taxes paid upon your own property (the La Grande hotel)''. The defendant immediately called his attention to the fact that the property was purchased for the mortgagors and that the defendant had no interest in it.

■ There is no doubt in our minds that the La Grande hotel property was purchased for the mortgagors, members of the Roesch family; that title thereto was held for them by the grantee; and that the defendant corporation had no interest in the property. This is borne out by the fact that the purchase price, advanced by the defendant, was charged to the mortgagors and included in their acknowledged indebtedness to the defendant. Moreover, it was agreed by the defendant that upon payment of the mortgage in full the defendant would cause the property, if title thereto then remained within its control, to be conveyed to the mortgagors or their assigns. We also have before us the letter of Julius Roesch, dated August 19, 1935, in which he advised one of the attorneys for the defendant corporation against permitting a renewal of the Rhodes option to purchase the La Grande hotel property and recommended action to be taken thereafter in regard to that property. In addition to the documentary evidence, there is the testimony of the defendant's representative who conducted the negotiations.

■■ Since we have concluded that the mortgagors were the owners of the La Grande hotel property from the date of its purchase from the receiver of the Spokane Savings Bank until it was sold by Union county for delinquent taxes, and that the defendant had no interest in that property, our next concern is whether or not the mortgagors agreed to repay the defendant for the delinquent taxes paid by it in 1935 on the La

Grande hotel property. The defendant's contention that such an agreement was made is supported by oral evidence and by the following provision in the letter of August 21, 1934, from the attorneys for the defendant corporation to Julius Roesch, consented to by him on behalf of all the mortgagors:

> "If it is necessary to advance any money for taxes upon the La Grande hotel, the company shall make such advances for the benefit of its mortgage."

The word "advance", as used in the foregoing quotation, means that the defendant would furnish money with the expectation of being repaid: *Linderman v. Carmin,* 255 Mo. 62, 164 S. W. 614; *Laflin & Rand Powder Co. v. Burkhardt,* 97 U. S. 110, 24 L. E. 973; *Balderston v. National Rubber Co.,* 18 R. I. 338, 27 A. 507, 49 Am. St. Rep. 772. Funds to be advanced by the defendant were to pay delinquent taxes on property owned by the mortgagors. When the money was so advanced it was on the understanding that it was supplied by the creditor for the benefit of the debtors and was to be repaid by the latter.

The paragraph last quoted from the attorneys' letter, construed with reference to the situation of the parties involved and in the light of the evidence in the record, impels us to the conclusion that all the parties concerned understood that any and all moneys which it was necessary for the defendant to advance for the payment of delinquent taxes on the La Grande hotel property were to be treated in the same manner as any taxes or other charges against the Sacajawea hotel that might be advanced by the defendant.

In our opinion, the defendant has established by clear, satisfactory and convincing evidence that the

mortgagors and the mortgagee understood and agreed that the mortgage on the Sacajawea hotel property should contain a provision substantially as alleged in the defendant's answer; and that such provision was omitted from the mortgage by inadvertence and mistake and without negligence on the part of the defendant. It follows that the decree of the circuit court is affirmed.