Argued July 19, affirmed September 21, petition for rehearing
denied October 14, 1971

# THE SEA FARE, INC., *Appellant,* v. PORT OF ASTORIA, *Respondent,* and PORT OF ASTORIA, *Respondent, v.* THE SEA FARE, INC., *Appellant.*

488 P2d 840

*Lawrence M. Dean,* Astoria, argued the cause for appellant. With him on the briefs were MacDonald, Dean & McCallister and Jeanyse R. Snow, Astoria.

*John J. Haugh,* Portland, argued the cause for respondent. With him on the brief were O'Connell, Goyak, Haugh & Loew; Frank H. Pozzi and Pozzi, Wilson & Atchison, Portland.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

This consolidated appeal involves two cases be-

tween the same parties. In the first suit, Sea Fare sought reformation of a lease entered into by the parties in 1964. The trial court dismissed the suit, stating that Sea Fare, Inc. had failed to meet its burden of proof. Plaintiff Sea Fare, Inc. requests that the suit be reinstated and reformation granted. The second case is a Forcible Entry and Detainer action to obtain possession of the same property covered by the lease. The trial court found for the Port and ordered Sea Fare, Inc. to vacate the premises. Defendant Sea Fare, Inc. maintains the court erred in its interpretation of the lease and requests this court to reverse the order of the trial court.

In 1960, the Port as landlord, and Sea Fare, Inc. as tenant, entered into a lease of Port property consisting of a building and adjacent space. Sea Fare, Inc. improved and remodeled the building and has since operated a restaurant and lounge on the premises. In 1964, Sea Fare, Inc. negotiated a new lease with the Port, nearly identical to the 1960 lease. The new lease, like the 1960 lease, was for a period of five years with a right to renew for five years. The leases contained, respectively, the following provisions on the matter of the five-year renewal:

"* * * [T]he lessee * * * shall have the right to renew the within lease for an additional period of five (5) years, upon such terms and conditions as shall be agreed upon by the parties hereto.

"* * * [T]he Lessor does hereby grant unto the Lessee the option and privilege of an extension of the Term of this Lease for an additional period of five (5) years from and after the expiration of the Term aforesaid, upon such terms and conditions as shall be agreed upon by the parties."

In the reformation suit, Sea Fare, Inc. sought

to have the court change the language of the lease to read:

"\* \* \* [Sea Fare, Inc.] shall have the right to renew the within Lease for an additional period of five (5) years, upon such *reasonable* terms and conditions as shall be agreed upon by the parties hereto *under the conditions then existing.*"

A fair summary of evidence presented regarding the reformation requested by Sea Fare, Inc. was as follows:

Thiel, one of the Sea Fare partners, and the only principal of the Sea Fare who was present during the 1960 and 1964 negotiations, testified that he thought there had been a "mutual understanding" that he was to receive a five-year lease with an option to renew for an additional five-year period. He later testified he wanted a ten-year lease, and thought that this is what he had received. He conceded the parties had entered into extensive negotiations as to a new lease or renewal, but had not been able to agree. Thiel admitted on cross-examination that he signed a letter sent to the Port in January of 1967 wherein he referred to the lease (which he previously stated ran ten years) as running for a five-year period and expiring in December of 1969.

Fulton, the attorney for the Port who drew up the lease, was called as a witness by Sea Fare. He stated his memory of the 1964 negotiations was extremely poor. Fulton stated his understanding was that the language and intent of the parties was to give Sea Fare a "first right of refusal," meaning the Port was obligated to negotiate with Sea Fare regarding an extension. He understood the agreement to mean that if the Port and Sea Fare were unable to reach a

meeting of the minds regarding terms and conditions, the Port would be free to negotiate with other parties.

Thomas Edison, who had been attorney for Sea Fare at the time the lease was signed, recalled that the negotiations were conducted in an air of good fellowship and that the only item the parties expressly stated they would be renegotiating at the end of the first five-year period was "rental." He understood the rental would be negotiated at the end of the term in light of the economic climate at that time. On cross-examination, Edison conceded the parties used the plural when referring to "terms" and "conditions," that rental would be one "term" to consider with regard to a lease but that there were others, such as length of the lease. Edison also conceded the parties had discussed terms in addition to rental in 1964; for example, he could specifically recall some discussion regarding structural improvements.

The above is, in essence, all of the testimony regarding the language used by the parties at the time of the 1964 signing, other than the testimony of all parties that it appeared to them that they would have no trouble in getting together as to terms once again in 1969. Extensive additional testimony, over objection, was admitted concerning Sea Fare's "loss" during the original five-year lease period (1960-1965), alleged difficulties between Sea Fare and the Port manager, and other items extraneous to the reformation issues themselves.

One who seeks reformation faces a presumption that the written instrument correctly states the terms of the agreement between the parties. *Boyce v. Killip*, 184 Or 424, 198 P2d 613 (1948). *See also, Williams v. Swartz*, 222 Or 223, 350 P2d 1079 (1960). The

presumption is a "strong one." As was stated by our Supreme Court in *Eley v. Miller,* 166 Or 80, 110 P2d 587 (1941):

"* * * There is a strong presumption that the contract and deed express what the parties had in mind, and the burden of overcoming such presumption rests upon the party seeking reformation. It is incumbent upon him to establish by clear, satisfactory, and convincing proof * * *." 166 Or at 88.

As was quoted with approval in *Miller v. Miller,* 120 Or 484, 489, 252 P 705 (1927), from [2] Pomeroy's Equity Jurisprudence [1757] § 859 (4 ed [1918]):

" '* * * Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error.' "

*See also, Roesch v. Equitable S. & L. Ass'n.,* 176 Or 7, 153 P2d 525 (1945).

■ Every presumption should be invoked in favor of the instrument in question as written on the theory that the sanctity of written agreements should be preserved. *Teachers' Fund Ass'n. v. Pirie,* 147 Or 629, 34 P2d 660 (1934), ORS 41.360.

■ In addition to overcoming the presumption in favor of the instrument, a party seeking reformation of the same on the basis of a "scrivener's error" has the further burden of proof to show that the reformation is necessary. He must support that burden with "clear and convincing evidence." *Weatherford v. Weatherford,* 199 Or 290, 257 P2d 263, 260 P2d 1097 (1953). *See also, Schluter v. Niagara Fire Ins. Co.,* 124 Or 560, 264 P 859 (1928); *Gilbert v. Calif.-Ore. Power Co.,* 223 Or 1, 353 P2d 870 (1960); *Miller v. Miller,* 120 Or 484, 252 P 705 (1927).

■ The recognized grounds for reformation are: (1) A mutual mistake of fact. See, e.g., *Ray v. Ricketts,* 235 Or 243, 383 P2d 52 (1963). (2) Mistake of law where both parties misapprehend the legal import of the words used or use words through mutual mistake or inadvertence. See, e.g., *Harris Pine Mills v. Davidson,* 248 Or 528, 435 P2d 310 (1968). (3) Mistake of one party and fraud on the part of the other party. *Markwart v. Kliewer,* 75 Or 574, 147 P 553 (1915).

None of these grounds exist here. We agree with the trial court that the plaintiff failed to meet its burden of proof.

■ Sea Fare, Inc. insists that even though reformation be not allowed, it should prevail on the Forcible Entry and Detainer action, citing *Edwards v. Tobin,* 132 Or 38, 284 P 562, 68 ALR 152 (1930), as authority. There the renewal clause in the lease read as follows:

> "It is further mutually agreed by and between the parties hereto that the lessees shall have an option to renew this lease at the expiration thereof, for a period of five years, subject to the conditions herein on the same terms as expressed in the within instrument with the exception of the rate or rental, which shall be determined at said time of renewal between the parties; said rental to be reasonable rental under the then existing conditions." 132 Or at 40.

It is to be noted that the above clause includes the words "reasonable rental" under the "then existing conditions," being almost the exact words plaintiff sought to have added in the reformation suit.

In *Slayter v. Pasley,* 199 Or 616, 264 P2d 444 (1953), the parties entered into a lease with an option for renewal which stated in relevant part:

> "* * * it is further agreed that the Lessees

> herein * * * may have an option for an extension of the period covered by this lease, the amount of the rental on the premises to be agreed upon at that time. * * *" 199 Or at 618.

The language in question there is almost identical to the language in question here. In denying the relief sought there because the parties had not agreed in advance to definite terms and because of the lack of specificity, the court, in adopting and approving what it called the majority rule, said:

> "The majority rule, in essence, is that a provision for the extension or renewal of a lease must specify the time the lease is to extend and the rate of rent to be paid with such a degree of certainty and definiteness that nothing is left to future determination. If it falls short of this requirement, it is not enforceable." 199 Or at 620.

About the case of *Edwards v. Tobin,* supra, the court said:

> "The [Edwards v.] Tobin case so definitely emphasizes the necessity for a species of definiteness so clear that the provisions of the agreement can be enforced that no comfort can be garnered by the appellant from that holding." 199 Or at 627.

This court is bound by *Slayter.* The trial court found that the defendant Sea Fare, Inc. had been in unlawful possession of the premises from January 1, 1970, and that the plaintiff Port was entitled to immediate possession. We agree with the trial court.

Affirmed.