HERSCHEL E. SINCLAIR

*vs.*

THE HOME INDEMNITY COMPANY

Somerset.   Opinion, August 12, 1963.

*Richard J. Dubord,*
*Lawrence D. Ayoob,* for Plaintiff.

*Robinson, Richardson, Leddy and Hewes,*
*by Richard D. Hewes,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ. MARDEN, J., did not sit.

TAPLEY, J. On appeal. This is an equity action seeking reformation of an insurance policy. The action was commenced by a bill in equity previous to the promulgation of the Maine Rules of Civil Procedure. The trial of the cause was had after the effective date of the new rules and all proceedings thereafter were conducted thereunder.

The matter was presented to and determined by a single justice without the intervention of a jury. He ordered that plaintiff's action be dismissed with costs and that judgment be entered for the defendant. The cause is before this court on an appeal from the final judgment.

The plaintiff is engaged in the contracting business requiring the use of heavy equipment. On April 18, 1953 he purchased a twenty-ton Lorrain Motor Crane which is a self propelled vehicle capable of being operated from job to job over the highway. Before purchasing the equipment the plaintiff consulted with his insurance agent, Mr. Lester L. Stone, who did business under the firm name and style of Stone Agency. Mr. Stone was a selling agent for The Home Indemnity Company, the defendant. He advised Mr. Stone that he was purchasing this piece of heavy equipment and was moving it over the road from Bangor to Millinocket. He informed Mr. Stone that he wanted complete coverage on the machine, both as to liability and collision insurance. He later received from Mr. Stone an insurance policy which he believed gave him the coverage he had requested. For two succeeding years he received renewal policies. These renewal policies provided the same coverage as did the original policy. Mr. Sinclair did not read the original policy nor the renewals because, as he testified, he was relying upon Mr. Stone, his insurance agent, to provide him with the coverage he requested.

On January 4, 1956, while the second renewal policy was in force, the crane, during the process of being operated on a highway in Bangor by the plaintiff, caused substantial damage to the property of third parties, as a result of which claims for damages were made against him, including one suit. Mr. Sinclair reported the claims for damage to the defendant insurance company, The Home Indemnity Company, whereupon the insurance company denied liability

on the basis that the original and renewal policies did not afford coverage.

Plaintiff Sinclair contends that it was the intent of defendant's agent, Mr. Stone and himself, that the original insurance policy and the two renewal policies were to cover the motor crane while being used on a public highway. He instituted this equity action to bring about a reformation of the policies, claiming that the lack of coverage was due to a mutual mistake.

The fact that the plaintiff did not read the original policy or the renewals is urged by the defendant as being fatal to plaintiff's cause in that he is now barred from seeking reformation of the policy and the renewals.

Where a mutual mistake is shown to exist as to the terms of an insurance policy, the same may be reformed even though the insured has failed to read the policy. *National Traders Bank, et al.* v. *Ocean Insurance Company,* 62 Me. 519.

The insured has a right to assume that a policy will be written in accordance with an antecedent oral agreement between himself and an agent for the company, and a failure on the part of the insured to read the policy is not a bar to its reformation. *Home Ins. Co. of New York* v. *Sullivan Machinery Co.,* 64 F. (2nd) 765.

> " - - - - *where the elements required for reformation are otherwise present,* even negligent failure of plaintiff to discover the variance between the instrument as written and the mutual understanding of the parties is not fatal to his right to have it reformed." *Broida* v. *Travelers' Ins. Co.,* 175 A. 493, 494. (Penn.). (Emphasis supplied.)

> "It is well settled that an insured has a right to presume that a policy received by him is drafted

in accordance with the agreement made between him and his insurer; and that his failure to read its provisions because of his reliance upon this presumption does not necessarily bar his subsequent action to have it reformed even after a loss if its terms are at variance with such agreement - - - - ." *Mosiman* v. *Rapacz,* 84 N. W. (2nd) 898, 903 (Minn.).

"The negligent failure of a party to know or to discover facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof." *Restatement of the Law (Contracts),* Chap. 17, Sec. 508.

See Annotation in 81 A. L. R. (2nd) beginning at Page 7.

Under the circumstances of the instant case, where the plaintiff testified he relied entirely on Mr. Stone, the acknowledged agent of the defendant, for insurance which would provide sufficient coverage for his needs, the fact that he did not read the policy or the renewals does not militate against him.

Mr. Stone, in his relationship with the plaintiff, was acting for and in behalf of the defendant, The Home Indemnity Company, as its agent. Both the defendant and its agent, Mr. Stone, are subject to the provisions of Sec. 63, Chap. 60, R. S., 1954, which in its pertinent part reads:

" - - - - Such agents and the agents of all domestic companies shall be regarded as in the place of the company in all respects regarding any insurance effected by them. The company is bound by their knowledge of the risk and of all matters connected therewith. Omissions and misdescriptions known to the agent shall be regarded as known by the company and waived by it as if noted in the policy."

The purpose of this law is to protect the public in purchasing insurance so that the insured may safely depend

upon an agreement made with the agent as fully and completely as one made with the company. The companies that hold their agents out to do business with the public must be bound by what they do in the name of the company.

The agent stands in place of the company. He is the company in all respects regarding any insurance effected in behalf of the company by him. *LeBlanc* v. *The Standard Insurance Company*, 114 Me. 6; *Maxwell, et al.* v. *York Mutual Fire Insurance Company*, 114 Me. 170; *Mercier* v. *The John Hancock Mutual Life Insurance Co.*, 141 Me. 376.

We now give our attention to the crux of this case. Does the evidence disclose such a mutual mistake as being one reciprocal and common to both the insured and the defendant's agent, wherein each labored under a misconception in respect to the terms of the original policy and its renewals?

The party alleging a mutual mistake must prove by convincing evidence that the instrument when altered will correctly reflect the actual intention of both parties to it and thereby perfect and establish the real agreement. *Potter* v. *Frank, et al.*, 106 Me. 165.

Plaintiff has the burden of proving that the mistake was mutual. *Andrews* v. *Andrews*, 81 Me. 337.

> "A mutual mistake which will afford ground for relief from a contract by reforming it, means a mistake reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument." *Tarbox* v. *Tarbox*, 111 Me. 374, 380, 381.

> "A mutual mistake is one common to both parties to a contract, each laboring under the same misconception; more precisely, it is one common to both or all parties, wherein each labors under the same misconception respecting a material fact,

the terms of the agreement, or the provisions of the written instrument designed to embody such agreement - - - - - ." *17 C. J. S., Contracts,* Sec. 144 (a).

See also *76 C. J. S., Reformation of Instruments,* Sec. 28 (a) (b).

Plaintiff Sinclair testified that he informed his agent, Mr. Stone, that he wanted complete liability and collision coverage on the Lorrain Motor Crane. He was informed by Mr. Stone that he was adequately covered and later he received a policy and the subsequent renewal policies. The plaintiff did not read the policies because, as he said, he relied on Mr. Stone to furnish him with the type of coverage required.

Mr. Stone, in testimony, claims to have communicated with Mr. Convey of The Home Indemnity Company regarding the Sinclair coverage and that Mr. Convey assured him that both liability and property damage would be provided to cover the machine when it was operated on the highway. Mr. Stone was told, as he says, that the policy would be issued and in the meantime a binder would be in effect.

The original policy issued in April of 1953, as well as its subsequent renewals, were liability policies based on and at the site of the work. The policies specifically excluded coverage of automobiles (land motor vehicles). Mr. Stone read the policy upon its receipt in April of 1953 with an understanding of its terms. He noted that the policy did not describe the crane; that it insured only the site or premises on which Mr. Sinclair might be working and that the policy specifically excluded coverage to automobiles or, as defined in the policy, "land motor vehicles."

Thomas Convey, Special Agent for The Home Indemnity Company, denied any conversation with Mr. Stone regarding coverage for Mr. Sinclair.

The record discloses a marked discrepancy between the testimony of Mr. Stone and Mr. Convey, thus presenting the presiding justice with the necessity of determining the credibility of these two witnesses whose testimony was so diametrically opposite and irreconcilable one with the other. The determination by the justice as to where the truth lies between these two key witnesses would have some bearing on resolving the question of mutual mistake between Sinclair and Stone.

Mr. Stone is an insurance agent presumed to be familiar with contracts of insurance. He read and understood the terms of the original policy. It is reasonable to deduce that in April of 1953 he must have had knowledge that the terms of the policy were not adequate to give Mr. Sinclair the coverage he requested. In the mind of Mr. Stone there could be no mistake that the terms of the policy did not cover Mr. Sinclair's needs. The fact he took no steps to notify the defendant of the insufficiency of the conditions of the policy and have them changed to meet the requirements is in itself strong and persuasive evidence to negate the existence of a mutual mistake between Mr. Stone, the agent of the defendant, and Mr. Sinclair, the plaintiff. The mistake, if there is one on the part of Mr. Stone, is not one in common with Mr. Sinclair, nor can it be said that Mr. Sinclair and Mr. Stone were laboring under the same misconception respecting the terms of the policy. The evidence does not support the cause of mutual mistake but rather a failure on the part of the agent for the defendant insurance company to provide Mr. Sinclair with the type of coverage he ordered.

The justice below was not in error when he dismissed the plaintiff's action and ordered judgment for the defendant.

*Appeal denied.*