Argued October 30, affirmed December 20, 1967, petition for rehearing denied January 16, 1968

## HARRIS PINE MILLS ET AL, *Respondents,* v. DAVIDSON ET AL, *Appellants.*

435 P. 2d 310

*R. T. Gooding* and *S. H. Burleigh,* LaGrande,

argued the cause for appellants. With them on the briefs were Burleigh, Carey & Gooding, LaGrande.

*Alex M. Byler,* Pendleton, argued the cause for respondents. With him on the brief were Corey, Byler & Rew, Pendleton; Charles R. Cater, LaGrande; and Robert V. Chrisman, Enterprise.

Before O'CONNELL, Presiding Justice, and GOODWIN, DENECKE, HOLMAN and WOODRICH, Justices.

WOODRICH, J. (Pro Tempore).

This is a suit for reformation of a deed. Defendants appeal from a decree which reformed a deed by granting plaintiffs a 50-year timber reservation on 960 acres of land.

On May 8, 1930, Bowman-Hicks Lumber Company deeded 1540 acres of land to R. J. Green "excepting and reserving" to the grantor the timber and necessary rights of way. Only 960 acres of this larger acreage is involved in this litigation. Hereafter, the 960 acres will be called Parcel A. The language of the timber reservation is as follows:

"Excepting and reserving to the party of the first part the timber now standing, growing or being or which may hereafter stand, grow or be upon the above described lands, together with the right at any time or times hereafter, and without limit as to time, subject only to the provisions hereinafter contained, to cut and remove said timber and when it enters upon said lands for the purpose of cutting and removing any of the timber thereon the party of the first part may cut and remove whatever of said timber it desires and may cut over said lands as many times as it desires so long as said lands are accessible to the party of the

first part's railroad, chutes or other facilities for removing said timber * * *."

The reservation was for an unlimited time, but contained a provision for its termination upon the happening of certain conditions. The release provision is as follows:

"* * * provided, however, that if the party of the first part has cut over any of said lands (whether it be the first, or not the first time) taking such timber as it desires and has taken up the railroad to which said lands are accessible and moved out its logging equipment by which the timber on said lands would be removed, the lands last mentioned shall be regarded as completely cut or abandoned and at the fixed maturity date of any of the notes above described, if said party of the second part shall not be in default, the party of the first part shall, upon request of the party of the second part, release from this exception and reservation any and all of the unreleased lands upon which its right to cut and remove timber shall have ceased in accordance with the foregoing provisions * * *."

On September 8, 1936, Green sold Parcel A on contract along with other acreage to one Peterson. The contract reserved the timber to Green for 50 years.

On March 24, 1944, Peterson sold Parcel A and an additional 2044 acres to Edwards. The additional 2044 acres will be called Parcel B, although it was not so separated in the legal description contained in the contract. Parcel B was not subject to the Bowman-Hicks timber reservation; Parcel A was.

The sale of Parcels A and B to Edwards was made by means of a new contract to which Green, Peterson, and Edwards were parties. This contract contained a 50-year timber reservation in favor of Green, worded

the same as the reservation in the 1936 contract. The 50-year reservation in favor of Green did not distinguish between Parcel A, where Green's 50-year right to the timber was subject to the prior right of the Bowman-Hicks timber reservation, and Parcel B, which was free of the Bowman-Hicks timber reservation.

On November 23, 1945, Bowman-Hicks deeded the timber to J. Herbert Bate Company.

On July 21, 1948, the Edwards contract was assigned to H. N. Ashby. The defendants are successors in interest to Ashby.

On August 19, 1948, Ashby, by letter, called Green's attention to the fact that the timber on much of the land described in the Edwards contract was owned by Bowman-Hicks in perpetuity. He states that if a new contract was prepared Green's 50-year timber reservation should be *"corrected."* The same day Ashby decided to pay the balance of the purchase price and obtain a deed to the land. Ashby, by a second letter dated August 19, 1948, asked Green "* * * [D]eed the land without timber reservation for as closely as I cut during the past two years there will be nothing left in 50 years.[1] * * * Of course the portion on which Bowman-Hicks hold rights will have to be deeded subject to their rights as per deed to you."

Green answered by letter of August 24, 1948:

"Now as to your request that I deed the land to you without timber reservation, the situation is that I have always felt that the timber reservation would have some value some fifty years from now,

[1] Ashby had been logging the timber on Parcel B in 1946 or 1947 prior to his acquisition of the Edwards contract. The logging was accomplished pursuant to a contract with J. Herbert Bate Company.

and have already made a commitment on that to my grandson. Also, I told my daughter when she was up here from California this year that the timber on there might be worth some money before the fifty years is up. It could grow quite a lot, and I therefore am not in position to deed the land without timber reservation."

On August 31, 1948, Green and Ashby met in the office of attorney Cecil Chrisman to discuss closing the transaction. Chrisman could not recall specific conversations that took place at this meeting and neither could Green. Ashby was not available to testify as he had died in 1949. After the meeting Chrisman prepared two deeds; one to Parcel B, in which the 50-year timber reservation in favor of Green was included, and another to Parcel A, which did not include the reservation but did contain the following language:

"* * * Save and except that the hereinabove described lands are subject to that certain reservation of timber and timber right-of-ways thereto in accordance with that certain deed from Bowman-Hicks Lumber Company to grantors herein, recorded in Book 45 of Deed Records of Wallowa County, Oregon, at Page 346 * * *."

The deeds were sent to Green on September 3, 1948, with a letter of transmittal calling Green's attention to the fact that the deed to Parcel B had the 50-year reservation and the deed to Parcel A was made subject to the Bowman-Hicks reservation. Green and wife signed the deeds a month later and returned them to attorney Chrisman for delivery when the contract balance was paid.

In August 1951 Green obtained from J. Herbert Bate Company, then owner of the Parcel A timber

rights, a release of their timber rights on Parcel A. The release was to become effective after October 1953. The release agreement between Green and Bate Company recites that Green had retained the timber rights in perpetuity. In January 1957 Green, through his attorney, sought a quit-claim deed to the Parcel A timber from Jeannie Ashby, widow and legatee of H. N. Ashby, deceased. After some discussion and negotiation the requested deed was refused. In January 1960 Green sold the timber on Parcel A to Harris Pine Mills.

■ In determining whether the court properly decreed reformation, it is necessary to determine what the agreement of the parties was. Defendants contend that the evidence fails to clearly, cogently and convincingly show that the intent of the parties as expressed in the written contracts preceding the deeds remained the same at the time of execution of the deeds. We hold that it does.

It is clear that Green intended to retain for 50 years whatever timber rights existed. He reserved the timber for 50 years under the Peterson contract and carried this reservation over into the Edwards contract.

Green's intention to retain the timber rights for 50 years in the land under contract to Edwards was explicitly conveyed to Ashby after Ashby purchased the Edwards contract. This is made clear in the exchange of letters between the two parties of August 19 and 24. Ashby was an experienced man in the timber field. For many years he was manager of the Bowman-Hicks Lumber Company and in this capacity bought timber and timber lands. He was familiar with the Bowman-Hicks reservation. In his letter of August 19, he referred to the Bowman-Hicks reservation as

"in perpetuity" and asked that the 50-year timber reservation to the Greens in the Edwards contract be corrected to reflect Bowman-Hicks' outstanding interest. He knew which tracts were subject to the Bowman-Hicks reservation and which were not. The Bowman-Hicks reservation was contained in a recorded deed and the release provision in that deed followed immediately after the language reserving the timber. We feel that under these circumstances, Ashby must have been aware of the release provision giving Green a right of re-entry upon the occurrence of the specified conditions. This becomes significant in determining what Ashby meant in his letters of August 19, when he asked that the contract be corrected and that the land be deeded without the timber reservation. It seems quite clear that Ashby intended that if a new contract were prepared, the new contract should be corrected to show that Green had only a right of re-entry as to the timber on Parcel A. His request that the land be deeded without the timber reservation was a request that Green give up whatever rights he had to the timber on all the land covered by the contract: that is, that Green forego his right of re-entry to the Parcel A timber and his reservation of the Parcel B timber. This Green refused to do, in clear and unambiguous language. As he stated in his testimony and letter of August 24, he wanted to keep the timber rights for 50 years so that he could leave them to his grandson in California. His letter makes it clear that he intended to deed the land only and would not deed the land without the timber reservation.

Knowing that Green intended to deed only the land, Ashby had two deeds prepared, one covering Parcel B reserving the timber, and one covering Parcel A excepting the Bowman-Hicks interest.

In signing these deeds, it is clear that Green was mistaken as to the legal effect of the language used in the deed to Parcel A. Apparently his mistake was due to the wording of the release provision in the Bowman-Hicks reservation which caused Green to believe that the right of re-entry was personal to him. As he testified:

"A Now, wait a minute. I would like to finish that answer. The timber on there had been reserved by Bowman-Hicks Lumber Company and, as I said, that—they eventually became the Bate Lumber Company and I knew that the timber was reserved under their rights—under their rights—but it—but I assumed wrongfully, apparently. I assumed that when the Bate Lumber Company released that land it would be released to me and that the timber rights which I had under the Peterson contract, under the old contract, would become back into effect and—

"Q But on this 960 acres, you didn't own the timber at all? Bowman-Hicks owned it; they'd reserved it in their deed to you?

"A No. They reserved it but it was to come to me eventually and eventually then I got a release; eventually the Bate Lumber Company released that timber to me, Mr. Burleigh."

In preparing the two deeds, Ashby must have either (1) shared Green's mistake and thought that excepting the Bowman-Hicks reservation from operation of the deed would accomplish the parties' understanding that Green retain the right of re-entry, or (2) known that the effect of the Bowman-Hicks exception was to deprive Green of the right of re-entry, a consequence not contemplated by the parties. In either event, equity will afford relief.

If both Ashby and Green believed that the language in the deed to Parcel A which excepted the Bowman-

Hicks contract was sufficient to preserve to Green his right of re-entry, this would constitute a mutual mistake of law, and would entitle plaintiff to relief. This rule has been stated as follows:

> "* * * [B]ut where, through a mistake of the parties or the draftsman, there is a failure to express the actual contract of the parties as contemplated, owing to the use of inapt words, or where the legal effect of the terms employed by the parties in putting their contract in writing results in an agreement different from the one really entered into, a court of equity will reform the writing so as to effectuate the intention of the parties, even though the mistake was one of law * * *." *Richmond v. Ogden Street Ry. Co.,* 44 Or 48, 54, 74 P 333 (1903), cited with approval in *Weatherford v. Weatherford et al,* 199 Or 290, 301, 257 P2d 263, 260 P2d 1097 (1953).

■ If, on the other hand, Ashby knew that Green did not intend to part with the timber (and we hold that the exchange of letters just before the signing of the deeds shows that he knew this) and if he further knew that the deed failed to accurately express this intention, then plaintiff would be entitled to reformation. The rule is set forth in Restatement, 2 Contracts 973, § 505:

> "Except as stated in §§ 506, 509-511, if one party at the time of the execution of a written instrument knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein, but knows what that intention is, the latter can have the writing reformed so that it will express that intention."

See, also, 3 Corbin, Contracts 730, § 614 (1960 ed); 5 Williston, Contracts 4340, § 1548 (rev ed 1937); *Ray v. Ricketts,* 235 Or 243, 383 P2d 52 (1963). Under

either view of the evidence the trial court correctly decreed reformation.

The defendants contend that plaintiffs' suit is barred by the passage of time. The evidence supports the trial court's finding that the mistake was discovered in 1957. This was about the time Green requested a correction deed from Ashby's successor. Suit was filed in 1962, well within the 10-year period prescribed for such suits. ORS 12.040 and 12.050. Some of the delay after discovery is accounted for by the pendency of settlement negotiations. This contention is without merit.

Other assignments of error are asserted and upon examination are found to be without merit.

Affirmed.