Aslaug Van Etten GABLICK, Executrix of the Last Will and Testament of Alice Astrid Anderson, Deceased, and Estate of Alice Astrid Anderson, Deceased, Appellants,

v.

Raymond G. WOLFE and Esther L. Wolfe, Appellees.

No. 1092.

Supreme Court of Alaska.

May 22, 1970.

Warren W. Matthews, Jr., Matthews & Dunn, J. L. McCarrey, Jr., Anchorage, for appellants.

Robert C. Erwin, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellees.

Before DIMOND, RABINOWITZ and CONNOR, JJ., and FITZGERALD, Superior Court Judge.

CONNOR, Justice.

This is an appeal from a summary judgment which was entered against appellant Gablick[1] in a real property transaction. Appellant sought reformation of certain documents, but this was denied by the trial court.

## THE PROCEDURAL BACKGROUND

After certain negotiations, appellant and appellees entered into an agreement for the sale of three downtown lots in Anchorage, Alaska. All parties agree that title was to be conveyed to appellees, that the total purchase price was to be $250,000, that there would be a $70,000 down payment at the time of closing (the funds to be produced by the sale of one of the lots), and that the balance of the purchase price, secured by a promissory note and a deed of trust on the remaining two of the lots, would be paid in annual installments of $12,000, and that the interest on the unpaid balance should be at the rate of 6% per annum. According to appellees, the $12,000 annual payment was intended to *include* interest at 6% per annum, but appellant contends that the agreement should have called for annual installments of $12,000, *plus* interest at 6% per annum.[2] The earnest money agreement and the promissory note signed by appellees sup-

1. Although there is more than one appellant, reference throughout this opinion will be made to Gablick as the "appellant" insofar as she is the active party in this appeal.

2. The earnest money agreement entered into by the parties uses the terminology "payable at an annual payment of Twelve Thousand Dollars ($12,000.00) including interest at the rate of 6% per annum." The promissory note signed by appellees is in the total sum of $250,000, and uses the terminology "with interest from date on unpaid principal at the rate of six per cent (6%) per annum; principal and interest payable in annual installments of Twelve Thousand and no/100 ($12,000.00) Dollars, or more on the 10th day of each and every year, beginning on the 10th day of January, 1967, and continuing until said principal and interest have been paid. Each payment shall be credited first on interest then due and

port appellees' position, for they indeed provide that the annual payments shall include interest.[3] As called for in the documents they had signed, appellees paid the first installment of $12,000 to appellant on January 10, 1967. In July of 1967 appellant, through her attorney, commenced a non-judicial foreclosure under the deed of trust, claiming that there was still owing to her the sum of $11,190 in unpaid interest in addition to the $12,000 annual payment. Appellees promptly brought this action to enjoin the non-judicial foreclosure, to quiet title in themselves, and to have the rights of the parties declared, as well as for other relief. Appellant counterclaimed for a reformation of the promissory note, on grounds of mistake. At a later point appellees moved for a summary judgment pursuant to Rule 56, Rules of Civil Procedure.[4] The pleadings, affidavits, and other papers filed by the parties reveal the following factual contentions and issues.

Appellant is the executrix of the estate of Alice Astrid Anderson, deceased. Appellant had seven years of schooling in Norway, but no academic training after moving to the United States in 1937. She states that approaches were made by appellees to purchase the property in 1965, that she indicated her intention to sell it, but placed the matter in the hands of her attorney, Mr. Manders, and that her attorney later advised her by long distance telephone of appellees' offer to purchase the property on the terms mentioned earlier, but with the interest to be in addition to a $12,000 annual payment on the principal, and that she accepted the offer. When she later received papers to sign, she assumed that they were prepared according to her understanding, being unfamiliar with legal terminology. She signed them and returned them to her attorney. Later, in 1967, she learned that a mistake as to the interest payments had been made in the documents she signed in 1965.

Appellant's attorney stated that during all of the negotiations for sale of the property, it was understood that the terms would be as now asserted by appellant. He stated that he prepared a deed of trust, certain escrow instructions to the Alaska State Bank, and a later notice of default, but denied that he prepared the promis-

---

the remainder on principal; and interest shall thereupon cease upon the principal so credited."

3. Under appellant's version of the transaction it would take about 15 years from the initial installment for the full payment of the purchase price to be completed. If appellees are correct, final payment would not be made until the year 2006, some 39 years after the first installment, owing to the extremely low amount which would go to principal out of the early payments. If one were to look only to the terms of the promissory note itself, the principal sum of $250,000 might never be paid, as 6% of $250,000 is $15,000, which exceeds the annual payment of $12,000. But the earnest money agreement indicates that $70,000 would be paid at closing, derived from the sale of one of the lots; thus, the initial principal balance would be $180,000.

4. The pertinent portion of Rule 56: "(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing, and may be supported by affidavits set-ting forth concise statements of material facts made upon personal knowledge. There must also be served and filed with each motion a memorandum showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The adverse party not later than two days prior to the hearing may serve opposing affidavits, a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, and any other memorandum in opposition to the motion. Judgment shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. Summary judgment, when appropriate, may be rendered against the moving party."

sory note or earnest money agreement and certain other documents. Just who drafted the critical documents is disputed.

Appellee Raymond G. Wolfe maintains that in the negotiations leading to the sale, the preliminary understanding had always been as reflected in the final written documents.

Appellees argue that presumably Mr. Manders prepared the promissory note because the note is referred to in the deed of trust which Mr. Manders did prepare. But the deed of trust merely mentions that it is for the purpose of securing payment of a promissory note "of even date, herewith, in the principal sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00)." This of itself does not quite establish that Mr. Manders either drafted or had knowledge of the terms of the note. Mr. Manders controverts this by affidavit.

Appellees argue that because the escrow instructions to Alaska State Bank, which Mr. Manders said he prepared, mention the $12,000 annual payment as "including 6% interest," this demonstrates that Mr. Manders was aware that this was the intention of the parties. We are not so sure. An inspection of the escrow instructions shows not only that they were typed in on a printed form (of another bank), but that the typewriter or typeface used to fill in the address after Mr. Manders' signature on the form is obviously different from the typewriter or typeface used to fill in the balance of the form. This raises some doubt in our minds about who did prepare this form, even though Mr. Manders signed it, as did both of the appellees. It also leaves in doubt what actual, as opposed to imputed, knowledge Mr. Manders had of the terms of the promissory note.

Additionally, appellees argue that the firm of "Roy Nigh and Associates, Real Estate" acted as broker for and as a representative of appellant, and that this fact should be given significance in determining that either appellant or her authorized

agents were aware of the interest terms of the bargain. We cannot so find. Appellant states that she did not list her property with Roy Nigh and Associates, but that they contacted her through her attorney, Mr. Manders. The role of the real estate firm is unclear at this point. The earnest money contract is prepared on a Roy Nigh and Associates form, and the firm was to receive a $15,000 fee by the seller's acceptance of the earnest money agreement. But, as the record now stands, this does not establish agency for either party to the transaction.

## THE LEGAL CONTENTIONS

In its decision on the summary judgment motion the trial court stated:

"The defendant's contention that during negotiations and discussions other facts were considered may well be true, but absent a showing of fraud, which is not pleaded or alleged, the Court cannot allow parole [sic] testimony that would contradict documents that not only are unambiguous, but reflect a transaction on terms consistent on their face."

█ It appears that the trial court employed a principle like that of the parol evidence rule, under which extrinsic evidence may not be used to vary the terms of an unambiguous document. But that is a rule of interpretation which has no direct application to actions for reformation. Stephenson v. Ketchikan Spruce Mills, Inc., 412 P.2d 496, 500 (Alaska 1966).

█ Nor is reformation limited to cases of fraud. It may be sought where a mutual mistake occurs in a writing which is to evidence the agreement arrived at between the parties. It is also available when the equivalent of mutual mistake is present. 5 Williston, Contracts (Rev. ed. 1937) §§ 1547–48. Where the mistake was made by one party but is known to the other party to the transaction, such knowledge by the other party is regarded as tantamount to a mutual mistake, and reformation may equitably be allowed.

Williston, supra, § 1573; Rest., Contracts § 505 (1932).

We need not elaborate on all of the subsidiary questions which come into play in an action for reformation, and which determine whether reformation may or may not be granted. It is enough here if appellant has shown a genuine issue of fact precluding summary judgment.

■ Appellees cite numerous authorities which state that reformation is not available for a mistake unknown to the other party to the agreement, and that clear and convincing evidence is required before a court will decree reformation for mutual mistake or its equivalent. But appellant is not asking to be relieved of those rules in the ultimate determination of this action. She concedes that these rules obtain in Alaska under Durkee v. Busk, 355 P.2d 588, 591 (Alaska 1960), but argues that a party opposing a summary judgment motion need not establish that he will ultimately prevail at trial. We agree that such a burden is not imposed by Rule 56(c), Rules of Civil Procedure, which requires only a showing that there exists a genuine issue of material fact to be litigated. 3 Barron & Holtzoff, Federal Practice and Procedure, § 1235, p. 141 (Rules Ed. 1958). The cases cited by appellees all treat the problem of whether the evidence produced at trial was suf-

ficient either to sustain or to compel a decree for reformation.[5] There are obvious distinctions between those cases and the question of what is necessary to survive a motion for summary judgment.

■ Appellees urge that if extended negotiations have taken place before the signing of a written agreement, this should prevent the remedy of reformation from being invoked. We are cited to Oxford Commercial Corp. v. Landau, 12 N.Y.2d 362, 239 N.Y.S.2d 865, 190 N.E.2d 230 (1963), and Birchcrest Building Co. v. Plaskove, 369 Mich. 631, 120 N.W.2d 819, 823 (1963). Both these cases focus upon the rule concerning integration of contracts, finding in each case that the parties intended the writing to express the entire agreement, thereby not permitting extrinsic evidence to interpret the agreement. Neither of these cases would bar an action for reformation based on mistake.[6]

■ Appellees next assert that there is no right to reformation where the contract is wholly or partially executed, coupling this with a discussion of the circumstances under which a contract may be rescinded. Appellant, of course, is not seeking rescission. Although the remedies are related, we are reluctant to confuse the principles governing the remedies of reformation and rescission or the conditions under which they can be invoked. We

---

5. Appellees cite Kincaid v. Baker, 403 P.2d 888 (1965); Abramson v. Nelson, 263 Minn. 308, 116 N.W.2d 405, 409 (1962); Sinclair v. Home Indemnity Co., 159 Me. 367, 193 A.2d 177 (1963); Conard v. Auto-Owners Mutual Insurance Co., 117 N.W.2d 53, 56 (Iowa 1962); Olinger Mutual Benefit Assn. v. Christy, 139 Colo. 425, 342 P.2d 1000, 1004 (1959); Edwards v. Zahner, 395 S.W.2d 185, 189 (Mo.1965); and Calvert Fire Insurance Co. v. Hardwicke, 338 S.W.2d 329 (Ark. 1960). In each of these cases there had been a full trial on the merits. Appellees also cite Lundgren v. Freeman, 307 F.2d 104, 113 (9th Cir. 1962), in which part of the case was determined on summary judgment and part after trial. The reformation question was determined on the merits by the submission of written evidence. But the appeal, and the appli-

cation of the clear and convincing evidence test, occurred after a final judgment.

6. The Oxford case applies the rule that a fully integrated agreement may not be varied by parol evidence. The case concerned a release and a covenant not to sue which resulted from long negotiations. It did not concern the reformation of a writing, but only its interpretation. The Birchcrest case denied reformation of an option agreement which was executed in settlement and release of various claims arising out of previous transactions between the parties. The court found that a novation was intended by the parties and that a failure to exercise the option did not revive the previous contractual relationships between them. Neither case would support the rule urged by appellees.

have not been provided with authorities which support appellees' argument as it pertains to reformation for mistake. The suggestion is made that where there has been a change of position in reliance on the agreement, as in this case by the sale of one of the lots to provide a down payment, reformation should not be permitted. But neither a long lapse of time before the discovery of a mistake, nor the occurrence of subsequent transactions, nor the partial performance of the contract, will of themselves bar reformation between the original parties or their successors in interest. Harris Pine Mills v. Davidson, 248 Or. 528, 435 P.2d 310 (1967). This assumes that the party seeking reformation has not engaged in inequitable conduct, such as laches.

There is a headlong clash between the affiants for appellant and appellees. According to one version, the documents reflect the transaction. This is flatly denied by appellant, who claims that a mistake occurred. If there was a mistake, the record at this point does not explain how it occurred or whether knowledge of it can be placed upon appellees.

■■ In determining whether there is a genuine issue of fact, the proofs offered must be viewed in the light most favorable to the party opposing the motion. Wilson v. Pollet, 416 P.2d 381 (Alaska 1966). Whether there was a mistake for which reformation should be allowed will depend in part on the credibility of the affiants on whom the parties relied in seeking and opposing the summary judgment. Such questions of credibility are particularly apt for resolution at trial, not in summary judgment proceedings.

Reversed and remanded for further proceedings consistent with this opinion.

BONEY, C. J., not participating.