Alan V. DAY and Thelma Page Day

v.

Currier McEWEN and Katherine
C. McEwen.

Supreme Judicial Court of Maine.

May 3, 1978.

Clayton N. Howard, Joel F. Bowie (orally), Damariscotta, for plaintiff.

Skelton, Taintor & Abbott, P.A. by Robert Checkoway (orally), Charles H. Abbott, Lewiston, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Plaintiffs Alan and Thelma Page Day commenced this action in Cumberland County Superior Court seeking injunctive and other relief against Currier and Katherine McEwen. The Defendants counterclaimed for reformation of two deeds, and after hearing, the court made findings of fact and conclusions of law and entered final judgment in all respects against the Plaintiffs and in favor of the Defendants. The Days seasonably prosecuted this appeal from the adverse decision of the court below.

We sustain the appeal in part and remand to the Superior Court.

Plaintiffs and Defendants are property owners in the town of Harpswell. Defendants' land lies on the shore of Merriconeag Sound, and the Days' property is located generally behind the McEwens' to the northwest, on the other side of Route 123. Plaintiffs' dispute with the McEwens concerns their asserted right to an unobstructed view of the Sound and their alleged title

and interest in part of that property on the shoreward side of Route 123 in which the McEwens claim title.

## I. *Right to Unobstructed View*

The Plaintiffs sought injunctive and other relief against the McEwens alleging that the "Defendants have planted, caused to be planted or allowed trees, bushes or shrubbery to grow on their said land in such a manner as to obstruct the view of the Plaintiffs of Merriconeag Sound in South Harpswell, Maine." The Days trace their claim of right to an unobstructed view of the Sound to two deeds appearing in their chain of title. Florence P. Ensign, who was Mrs. Day's aunt, once owned all the land involved in this litigation, both that now owned by the Plaintiffs and that now owned by the Defendants. In 1952 the McEwens purchased from Mrs. Ensign two parcels of land on the shoreward side of Route 123. That deed of conveyance contained the following restrictive language:

"Said Grantor excepts and reserves from this conveyance, for herself, her heirs and assigns, as appurtenant to her other land located on the northwesterly side of Route 123, the *right to an uninterrupted and unobstructed view from her cottage thereon of Merriconeag Sound*, and, *as part of the consideration for this conveyance, said Grantees* [the McEwens] *covenant for themselves* their heirs and assigns, as a covenant running with the land, *that they will not at any time hereafter* construct, erect or maintain any building or addition to building or any other structure, or *plant or permit any trees, bushes or shrubbery on their said land, so as to obstruct the view of Merriconeag Sound as hereinbefore reserved from the cottage on said other land of said Grantor* [Mrs. Ensign, the Days' predecessor in title] situated on the northwesterly side of said Route 123." [1] (Emphasis added)

In recognition thereof, her 1952 deed contained the following additional language:

". . . and the said Grantor further grants to the said Grantees, their heirs and

---

[1] After her 1952 deed to the McEwens, Mrs. Ensign still owned a sizable parcel with shore frontage on the shoreward side of Route 123, adjacent to the land conveyed to the McEwens.

In 1958 the McEwens purchased Mrs. Ensign's remaining property on the shoreward side of Route 123 by a second deed containing a reservation and a covenant identical to those included in the 1952 deed just quoted.[2]

In 1960 Mrs. Ensign deeded her remaining property on the other side of Route 123 to Frederick and Jeanette Beckwith, and in 1968 Mrs. Beckwith (then the surviving joint tenant) conveyed that property to the Plaintiffs. Each of those deeds contained language stating that it was "[a]lso conveying . . . the right to an uninterrupted and unobstructed view of Merriconeag Sound from the building on the conveyed premises" as reserved by Florence P. Ensign in the two deeds to the McEwens. Plaintiffs assert that the quoted language in the 1952 and 1958 deeds from Mrs. Ensign to the McEwens created both an "easement appurtenant" and a covenant "running with the land," benefiting the property retained by Mrs. Ensign on the northwesterly side of Route 123. The Plaintiffs further assert that the covenant entered into by the McEwens is now enforceable by them as successors in title to the benefited estate, against the McEwens, who were the original grantees of the burdened estate and promisors of the covenant.

The Superior Court sitting without a jury heard testimony from several witnesses, including the parties, and in addition, after viewing a series of photographs taken over the years, inspected the parties' property on two occasions—once in early spring and once at the height of summer's foliage. That evidence amply supports the court's factual determination that certain pin cherry trees, and "possibly some of the alders," within the Plaintiffs' viewing arc and "naturally growing on the land of the Defendants at their present height . . . substantially obstruct and diminish Plaintiffs' view of the Sound from their said Cottage." The court concluded that:

"To the extent that this vegetation has grown since 1952 and 1958 . . . its continued presence on the land would seem to be a violation of the covenants in the deeds, under the construction placed thereon by the Plaintiffs, and entitle them to relief . . . ."

Nonetheless, the court dismissed Plaintiffs' claim for injunctive relief on the ground that the covenant itself was unenforceable as a matter of law. We disagree.

Without attaching any definitive legal label to the rights and duties created by the restrictive language in the 1952 and 1958 Ensign-to-McEwens deeds, we conclude that the parties thereto intended to impose upon the McEwens as grantees an affirmative duty to prevent, and, if necessary, to remove natural growth that thereafter interfered with the grantor's reserved right of view. The covenant assumed by the McEwens in conjunction with the reservation to the grantor, Mrs. Ensign, of the right to an uninterrupted and unobstructed view of Merriconeag Sound expressly stated that the McEwens would not "*permit* any trees, bushes or shrubbery on their said land, so as to obstruct the view of Merriconeag Sound as hereinbefore reserved . . . ." (Emphasis added) Moreover,

---

assigns, the right to an uninterrupted and unobstructed view from the existing cottage on the parcel second above described, of Merriconeag Sound, Casco Bay and the Islands of Casco Bay, over other land of said Grantor situated on the southeasterly side of said Route 123.

"The said Grantor covenants for herself, her heirs and assigns, as a covenant running with the land, that she will not at any time hereafter construct, erect or maintain any building or other structure, or plant or permit any trees, bushes or shrubbery upon her land lying southeasterly of said Route 123, so as to obstruct the present view of Merriconeag

Sound, Casco Bay and the Islands of Casco Bay, from the cottage on the parcel second above described."

That parcel constituted the premises conveyed by Mrs. Ensign to the McEwens in 1958.

2. After the 1958 conveyance Mrs. Ensign retained title to a small trapezoidal lot upon which was located a water pump house, tank house and well which serviced her cottage on the other side of Route 123 and, in connection therewith, she reserved a right of way and water pipe line over the McEwens' land. Plaintiffs' claim to those property interests is treated later in this opinion.

the present Plaintiffs, as successors in title to the McEwens' grantor, are in a position to insist upon the McEwens' compliance with the deed obligations. The grantor, Mrs. Ensign, expressly excepted and reserved the right of view "for herself, her heirs and assigns, as appurtenant" to her retained estate. By accepting the 1952 and 1958 deeds with that reservation, the McEwens promised "as a covenant running with the land" that they would not thereafter construct any building or structure, or "plant or permit" natural growth so as to obstruct the grantor's previously reserved right of view. The McEwens' covenant not to obstruct the ocean view reserved by Mrs. Ensign for herself and her heirs and assigns was recited as being part of the consideration given by the McEwens for the land they were purchasing from Mrs. Ensign. The original parties thus intended that the benefit of the promise, as incident to the right of view reserved to the grantor's estate, pass to the grantor's successors in title. See *Restatement of Property* § 542 (1944). The Plaintiffs stand, therefore, in the shoes of the original grantor, Mrs. Ensign, for purposes of enforcing the deed covenant.

On the facts now before us, we squarely confront the question, novel to this court, of the enforceability of that affirmative duty not to "permit" natural growth to interrupt and obstruct the view of the Sound from the Plaintiffs' land. Courts in this country have adopted a flexible approach toward the enforcement of covenants which "touch and concern" the land and impose obligations affirmative in nature upon the owners of the burdened property. A variety of factors are relevant to the determination of enforceability, including the reasonableness of the obligation imposed in terms of its scope and duration, and the clarity with which it is defined. See, e. g., *Boston & Maine R.R. v. Construction Machinery Corp.*, 346 Mass. 513, 194 N.E.2d 395 (1963); *Petersen v. Beekmere, Inc.*, 117 N.J.Super. 155, 283 A.2d 911 (1971); *Leh v. Burke*, 231 Pa.Super. 98, 331 A.2d 755 (1974). We conclude, upon analysis of those relevant policy considerations in the context of the present case, that the McEwens must comply with the terms of the covenant which they themselves entered into by accepting the 1952 and 1958 deeds.

In this action the Days seek no more than specific enforcement of the deed covenant as against the original promisors. The Ensign-to-McEwens deeds recite that the covenant was entered into by the McEwens "as part of the consideration" for each conveyance. The McEwens as grantees assumed the burden of that promise fully cognizant of its terms and of its purpose to benefit Mrs. Ensign's retained parcel and her successors in title thereto. It takes little imagination to deduce that an unobstructed ocean view was regarded by all the parties as contributing to the value of the retained property. That the McEwens were so aware is confirmed by the Superior Court's finding, supported by the record, that

> "[f]or their part the Defendants admit the existence of the covenant and scenic easement, their title to the land, and that they were instrumental in the creation of the scenic easement and covenant in issue and would, themselves, have enforced it, if it had been violated by their Grantor during her ownership of the parcel conveyed by the 1958 deed."

Moreover, the covenant here involved, although necessarily requiring ongoing affirmative activity on the part of the promisors, is not so vague or burdensome that the McEwens should here be relieved of their obligations of performance. While a covenant restricting the use of land "ought not to be extended by construction beyond the fair meaning of [its] words," *Leavitt v. Davis*, 153 Me. 279, 281, 136 A.2d 535, 537 (1957), no such difficulty attends construction of the restrictions in the present case. The covenant is clear and unambiguous, i. e., the McEwens promised "as a covenant running with the land that they [would] not at any time hereafter . . . plant or *permit* any trees, bushes or shrubbery on their said land, so as to obstruct the view of Merriconeag Sound as hereinbefore re-

served . . . ." (Emphasis added) The McEwens must monitor and, when necessary, cut back natural growth of trees, bushes, and shrubbery that, in the language of the reservation, "interrupts and obstructs" the view from the benefited estate now owned by the Days. Furthermore, we approve in pertinent part the Superior Court's findings of fact and conclusions of law on this issue. Those findings establish clear objective guidelines for the future conduct of these parties, thus minimizing the need for future deed interpretation and supervision by a court of equity.[3] Finally, we reject the McEwens' contention that their obligation is too uncertain to be enforced because successive owners of the benefited estate are apt to enforce the covenant with unequal degrees of vigilance. The McEwens knew, when accepting the deeds, that the benefit of their promise was intended to run to the grantor's heirs and assigns. They certainly will not complain if some owners of the benefited estate in the future neglect full enforcement of their right to a view of the Sound. And they cannot be heard to complain now that the Days call upon them merely to do what they freely covenanted to do.

In sum, we perceive no inequity in enforcing the terms of the covenant, insofar as here at issue and on the present facts, against these original promisors for the benefit of the Days. That is all we here decide. We direct the Superior Court on remand to enter an appropriate order granting the requested injunctive relief.[4]

## II. *Title to Pumphouse Lot*

In this same action Plaintiffs sought injunctive relief and damages for trespass against the McEwens based upon a. claim of title to a small trapezoidal lot abutting the McEwens' property.[5] Defendants do not deny that they have constructed a building which in part overlaps the disputed parcel. Although the Superior Court ruled that naked legal title to the parcel had vested in Mrs. Day upon Mrs. Ensign's decease, the court granted the Defendants' prayer for deed reformation, upon finding that Mrs. Ensign, the Beckwiths, and the McEwens had intended to convey, and receive, title to the lot by certain deeds which had in fact been legally ineffectual to accomplish their intent. A party seeking reformation of a written instrument on the ground of mutual mistake of fact must prove the same by "convincing evidence."

3. The court below specifically found that "with the exception of the cherry trees, the view today is essentially the same as it was at the time of the Defendants' purchase of the land." The court took as the relevant "viewing arc" the view of the Sound from the Plaintiffs' front doorstep bounded on each side by buildings which were on the premises at the time of the Ensign-to-McEwens conveyances. From that vantage point, the court found that only the continued presence of the cherry trees, and "possibly some of the alders," constituted a present breach by the Defendants of their covenant not to permit such growth to "interrupt and obstruct" the view of the Sound reserved to the benefited estate owned by the Days. Thus, the only growth on the Defendants' land which can form the basis of a covenant violation is that which falls within the Plaintiffs' viewing arc, as defined above, and which exceeds the height of the predominant shrubbery, which, the Superior Court found, was fully mature at the time of the 1952 and 1958 deeds. The burden on the McEwens and on the Superior Court in terms of supervision is obviously minimal, requiring trimming only the cherry trees, and possibly some alders, as determined

by the court on remand in fashioning its injunctive decree.

4. The Superior Court justice who tried this case below has since retired. Because he heard the oral testimony and viewed the premises, he is in a uniquely favorable position to propose to the court on remand the form of injunctive order for specific performance by the Defendants of their covenant and to supervise the carrying out of that order. We suggest that such circumstances constitute the "exceptional condition" that would justify the Superior Court's appointing the retired justice as a referee for those purposes. Rule 53(b)(2), M.R. Civ.P.

5. The Plaintiffs also claim to own a water pipe easement and right of way from the trapezoidal lot over the McEwens' land to the Plaintiffs' cottage on the other side of Route 123. That claim plainly lacks merit. As is clear from the text discussion, the Ensign-to-Beckwiths and Beckwiths-to-McEwens deeds were sufficient legally to release the easement and right of way to the McEwens as owners of the servient estate.

*See, e. g., Sinclair v. Home Indemnity Co.,* 159 Me. 367, 193 A.2d 177 (1963); *cf. Horner v. Flynn,* Me., 334 A.2d 194, 200 (1975) ("preponderance could result only from evidence which was of a quality appropriately described as clear and convincing"). Such evidence plainly was produced in the present case and supports the Superior Court's determination of mutual mistake.

In 1952, when Mrs. Ensign first deeded to the McEwens part of her property on the shoreward side of Route 123, she retained title to a narrow strip of land which bisected the property then conveyed to the McEwens. That strip linked her remaining piece of shore frontage with a small trapezoidal lot, containing about 1166 square feet, upon which were situated a tank house, pump house, and well. In the 1952 deed Mrs. Ensign also excepted and reserved a narrow right of way from that trapezoidal lot over the McEwens' land to Route 123 and the right to maintain a line of water pipes from the trapezoidal lot to her cottage across Route 123. Mrs. Ensign retained title to that lot and to the right of way and pipe line easement after she conveyed her remaining shore frontage to the McEwens in 1958. During those years Mrs. Ensign, who continued to use the well for water for her own cottage on the other side of Route 123, supplied the Defendants with water from the well and pumping system for a nominal annual fee and had at one point, in a letter to Dr. Currier McEwen in 1957, noted that "as for the well beside you, and which we have shared, I think you must decide that question with whomever buys my place." The 1960 Ensign-to-Beckwiths deed contained no language of conveyance relating expressly to the trapezoidal lot, but did state that the grantor was "also conveying all the rights, privileges and easements, including without limiting the generality of the foregoing, the right of way [and] the right to maintain, repair, replace, lay and relay water pipes." Shortly after accepting that deed the Beckwiths entered into an agreement to convey to the Defendants the well, pump, water tank, pipes, and shed and to release the easements for the sum of $609. The Beckwiths then deeded the right of way and pipe line easement to the McEwens on November 28, 1960, after having made other arrangements for their own water supply. Mrs. Beckwith's 1968 deed to the Days did not mention the trapezoidal lot or the easements.

On the above evidence, the Superior Court clearly could find that Mrs. Ensign originally retained the small parcel and easements in order to supply water to her cottage on the opposite side of the road; that she intended to convey those interests to the Beckwiths, who purchased her cottage in 1960; and that in 1960 the Beckwiths intended to convey, and the McEwens to buy, all their right, title and interest in both the trapezoidal lot and the attendant easements. The Superior Court unquestionably had power, as a court of equity, to grant the reformation prayed for by the Defendants. 14 M.R.S.A. § 6051(4) (1964); *see, e. g., Perron v. Lebel,* Me., 256 A.2d 663 (1969). On the evidence, it was clearly correct in doing so.

The entry must be:

Appeal sustained.

Judgment reversed in part; case remanded to the Superior Court for further proceedings consistent with this opinion.

DELAHANTY, J., did not sit.