**DIAGNOSTIC IMAGING CENTER ASSOCIATES, a Limited Partnership, and Harold Cable, an individual, Appellants,**

v.

**H & P, a General Partnership, Appellee.**

No. S–3817.

Supreme Court of Alaska.

Aug. 16, 1991.

William Grant Stewart, McCarrey & McCarrey, Inc., Anchorage, for appellants.

Richard H. Foley, Jr., Foley & Foley, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Justice.

Appellants, defendants below, are Diagnostic Imaging Center Associates ("DICA"), a limited partnership, and Dr. Harold Cable, a general partner in DICA. Appellee, plaintiff below, is H & P, a general partnership formed by Dr. James Pister and Dr. Randolph Hall in 1982. Pister formed DICA with two other doctors in 1984, and remained a partner until 1988. Cable became a general partner in DICA in 1987.

---

Prior to the formation of DICA, H & P entered into a lease/purchase agreement with Equitable Life Leasing Company (the "Equitable lease") for two ultrasound machines. On or about September 1, 1984, H & P orally agreed to sublease the two ultrasound machines to DICA. Under the terms of the sublease, DICA paid $3,878.48 monthly to H & P for the machines, an amount identical to H & P's monthly lease obligation to Equitable.

In 1987 and 1988, various disputes arose between DICA and H & P. Pister was repeatedly questioned by the other DICA partners about the oral sublease. Pister told Cable and the other DICA partners that the sublease "corresponded exactly with [H & P's] lease/purchase agreement with Equitable Life and that both leases expired in September 1989, and that at that time, title to both pieces of equipment would vest in DICA at no additional cost."[1] In fact, the Equitable lease ended in May and June of 1988.

On February 18, 1988, H & P and DICA, each aided by counsel, entered into a written settlement agreement to resolve their disputes. Among other things, the agreement outlined the terms of the oral sublease.[2] Although there is no mention of the length of the Equitable lease in the agreement, during the negotiations H & P's attorney represented to DICA that the Equitable lease expired in the summer of 1989.[3]

Under the terms of the settlement agreement, payments were to continue through September 1, 1989. According to DICA, this was to give H & P a few months of payments beyond that required to pay off Equitable. At the time of the settlement agreement, DICA was unaware that the Equitable lease was to expire in 1988, not 1989, and that the agreement provided H & P with fifteen months of payments after the Equitable lease ended. Cable states that he would not have agreed to the sublease provision in the settlement agreement if he had known the truth about the Equitable lease.

Paragraph 22 of the settlement agreement contains an integration clause providing:

This agreement contains the entire understanding between the parties and supersedes all prior and contemporaneous understandings and agreements between them respecting the within subject matter.

The parties also agreed to execute "mutual releases releasing each other from all claims which they may have against one another arising out of the DICA Limited Partnership...."

In April 1988, Equitable threatened to repossess the machines because H & P was not making the lease payments. DICA

---

**1.** Pister denies making any representations about the length of the Equitable leases. However, because we must view the facts in the light most favorable to DICA, the non-moving party, we assume that the disputed representations were made. *Duty Free Shoppers Group, Ltd. v. State,* 777 P.2d 649, 652 (Alaska 1989).

**2.** The Preamble to the settlement agreement provides in part:
WHEREAS, H & P is the lessor of one (1) ATL 600 Ultrasound Machine and one (1) ADR 4000 Ultrasound Machine from Equitable Life Leasing Corporation. These machines are currently being subleased to DICA for the sum of THREE THOUSAND EIGHT HUNDRED SEVENTY–EIGHT DOLLARS AND FORTY–EIGHT CENTS ($3,878.48) per month for a period of five years beginning on September 1, 1984 with final payment due on or before September 1, 1989.

Paragraph 6 of the agreement provides:
H & P will execute a Bill of Sale conveying all right, title and interest which it may have in the ATL 600 Ultrasound Machine and ADR 4000 Ultrasound Machine to DICA. Consideration for said transfer shall be payments of THREE THOUSAND EIGHT HUNDRED SEVENTY–EIGHT DOLLARS AND FORTY–EIGHT CENTS ($3,878.48) on the first day of each month through and including September 1, 1989.

**3.** Notes taken by DICA's attorney Lance E. Gidcumb, of his conversation with H & P's attorney Stanley Lewis, suggest that DICA was told the lease expired in 1989. Although Lewis denies making such representations, we are required to accept DICA's version of the facts, *see supra* note 1, and therefore assume Lewis told Gidcumb that the Equitable lease expired in 1989.

contacted Equitable directly and learned that the Equitable lease actually expired in 1988.[4] DICA then made the lease payments directly to Equitable, bypassing H & P. Title to the machines was transferred from Equitable to DICA at the end of the Equitable lease.

H & P sued DICA, seeking the additional sublease payments required under the terms of the settlement agreement. The superior court granted H & P's motion for summary judgment without opinion and awarded H & P $60,410.43 plus costs, interest, and attorney's fees. DICA appeals.

DICA argues that the settlement agreement was induced by a misrepresentation concerning the length of the Equitable lease. Alternatively, DICA argues that the agreement was the product either of a mutual mistake as to the length of the Equitable lease, or a unilateral mistake by DICA which was or should have been appreciated by H & P. On these grounds DICA seeks rescission or reformation of the agreement.

■ H & P counters with a lengthy discussion of the parole evidence rule. The rule, however, does not apply where a contract has been formed as a result of misrepresentation or mutual mistake. *Gablick v. Wolfe*, 469 P.2d 391, 394–95 (Alaska 1970).[5]

■ H & P's argument that the misrepresentations or mistakes were not material is also unconvincing. H & P argues that DICA agreed in the settlement agreement to pay a reasonable price for the ultrasound machines and therefore Pister's profit on the transaction is immaterial. This argument fails to consider the full circumstances of the settlement transaction. We defined materiality in *Cousineau v. Walker*, 613 P.2d 608, 613 (Alaska 1980).

Materiality is a mixed question of law and fact. A material fact is one "to which a reasonable man might be expected to attach importance in making his choice of action." It is a fact which could reasonably be expected to influence someone's judgment or conduct concerning a transaction.

(quoting W. Prosser, *Law of Torts* § 108, at 719 (4th ed. 1971)) (other citations omitted).

H & P and DICA were negotiating a settlement to a number of disputes, and we assume that each party made a number of concessions. That H & P was to receive a profit of more than $45,000 beyond that disclosed to DICA is a fact to which a reasonable negotiator would be expected to attach importance and cannot be immaterial. This is particularly true in light of the fact that Pister was a partner in both H & P and DICA at the time the settlement agreement was negotiated. Cable, the other DICA partner,[6] might well have resented any profit Pister was making at his expense.

There is evidence in the record which tends to confirm the materiality of H & P's misrepresentations. Dr. Cable states that he agreed to the settlement "with the understanding that the Equitable leases expired in the summer of 1989, and I would not, and did not, agree that H & P would receive a year of payments beyond what was needed to pay the Equitable lease/purchase." Gidcumb, DICA's attorney during the settlement negotiations, states that he relied on the representations of H & P's attorney and that if he had been aware of the true expiration dates of the Equitable leases he would not have been authorized to agree to a 1989 expiration of the sublease.

4. According to Gidcumb, he and Lewis called Cindy Allopena of Equitable on April 19, 1988, "and both of us were shocked to be told by her that the leases expired in May and June of 1988 and not 1989, and I remember seeing that Mr. Lewis was visibly disturbed when he heard this."

5. H & P acknowledges this rule at one point in its brief.

6. By the time the settlement agreement was entered into, only Pister and Cable remained as general partners in DICA.

Because there are genuine issues of material fact concerning whether material misrepresentations or mistakes were made, the judgment in this case must be reversed and the case remanded for further proceedings.[7]

REVERSED and REMANDED.

---

[7] Because we reverse and remand on the merits, the award of attorney's fees is vacated. For the same reason, the defendants' motion to amend clearly is no longer futile, as argued by H & P. Thus, on remand, the superior court should consider anew the defendants' motion to amend.